Gerald F. BACHAND, Plaintiff-Respondent,†

v.

CONNECTICUT GENERAL LIFE INSURANCE COMPANY, Defendant-Appellant.

Court of Appeals

*No. 80–704. Argued December 12, 1980.—*
*Decided February 24, 1981.*
(Also reported in 305 N.W.2d 149.)

† Petition to review denied.

618

For the defendant-appellant the cause was submitted on the brief of *David E. Jarvis* and *Gregory S. Pokrass* of *Quarles & Brady* of Milwaukee. Oral argument by *David E. Jarvis.*

For the plaintiff-respondent the cause was submitted on the brief of *Hugh R. Braun* of *Godfrey & Trump* of Milwaukee. Oral argument by *Hugh R. Braun.*

Before Voss, P.J., Brown and Scott, J.J.

BROWN, J. This case presents a question regarding the relationship between the courts and administrative agencies. Gerald Bachand's complaint is that he was fired in violation of the Wisconsin Fair Employment Act. Throughout, "dual track" proceedings have occurred, and, throughout, the employer has sought to have the circuit court proceedings dismissed. Because the Wisconsin Fair Employment Act provides for lost wages to be pursued only through an administrative agency

(DILHR), we reverse that part of the judgment. We also reverse that part of the judgment allowing compensatory and punitive damages for emotional distress.

Gerald F. Bachand was employed by Connecticut General Life Insurance Company from March 4, 1968 until July 31, 1973, when he was terminated. He filed a complaint with DILHR alleging his termination violated provisions of the Wisconsin Fair Employment Act, secs. 111.31–37, Stats., prohibiting discrimination in employment against handicapped persons. Bachand claimed he was fired because of his alcoholism. He asserted that his alcoholism was a handicap within the meaning of the act and was the sole reason for his discharge.

At the time Bachand filed the complaint with the department, the Wisconsin Fair Employment Act limited DILHR to providing prospective relief. This prospective relief was in the form of reinstatement and orders restraining employers from further acts of discrimination.

Effective June 15, 1974, however, and before DILHR heard the case, the legislature broadened DILHR's powers to include the remedy of backpay.[1] DILHR heard the case in March 1975 and ultimately granted backpay in addition to the customary prospective relief.

DILHR's decision was affirmed by the Dane county circuit court but was remanded by the Supreme Court of Wisconsin in *Connecticut General Life Insurance Co. v. DILHR*, 86 Wis.2d 393, 273 N.W.2d 206 (1979). The court concluded there was insufficient evidence to support the conclusion that Bachand was "handicapped" and

---

[1] The amended statute, sec. 111.36(3)(b), Stats. (1977), reads in pertinent part as follows:

(b) If, after hearing, the department finds that the respondent has engaged in discrimination, it shall make written findings and order such action by the respondent as will effectuate the purpose of this subchapter, with or without back pay. Back pay liability shall not accrue from a date more than 2 years prior to the filing of a complaint with the department.

directed DILHR to determine whether the drinking problem constituted the disease of alcoholism or a condition short of that. *Id.* at 409, 273 N.W.2d at 213.

A further hearing before DILHR was held on May 16, 1979. DILHR found Bachand's alcoholism was definable as a handicap and again awarded backpay. The DILHR decision is presently pending on appeal before the circuit court in Dane county.

Just prior to the second DILHR hearing, Bachand filed the instant action in Racine county circuit court against Connecticut General and Robert Strom, the manager of Connecticut General's Racine claims office.

The complaint in this case, like the complaint Bachand filed with DILHR, alleged that his termination was in violation of the Fair Employment Act. According to Bachand, the termination occurred solely because of his "alcoholism." A separate cause of action was also asserted for intentional infliction of emotional harm. The action sought compensatory damages for loss of prior and future wages and benefits, personal humiliation and embarrassment, irreparable damage to career planning and career potential, future moving expenses and relocation costs, costs and disbursements and punitive damages.

Connecticut General moved that this action be dismissed for lack of jurisdiction over the subject matter, failure to state a claim upon which relief could be granted and because there was another action pending between the same parties for the same cause (the DILHR proceeding). The trial court dismissed Strom from the suit but denied the remainder of the motion. The trial court ruled that Bachand could recover all of his damages in a civil action against the employer. Further, the court ruled that it was proper to commence separate proceedings before DILHR and the circuit court, notwithstanding the concurrency of those proceedings. Finally, the court noted that the recovery of compensatory

and punitive damages beyond backpay presented a jury question.

Within the context of a motion *in limine*, Connecticut General again moved: (1) to dismiss the action in its entirety; (2) in the alternative, to stay the action pending final disposition of the DILHR proceedings, and (3) in the alternative, to exclude all evidence of damages beyond backpay. The trial court denied the motion, the first two requests on the same basis as the prior motion and the third request on the basis that the complaint stated two causes of action: "backpay and intentional tort." Thus, while damages beyond backpay could be recovered, they would be awardable only in the intentional tort claim.

On June 24, 1979, trial to a jury was commenced. The jury ultimately rendered a verdict which found that Bachand was an involuntary alcoholic and that Connecticut General terminated Bachand's employment because of his alcoholism. Although the jury found that Bachand's firing was extreme and outrageous and caused Bachand emotional distress, the jury decided the firing was not done with intent to cause the emotional distress. The jury awarded $35,000 damages for emotional distress and $50,000 for punitive damages. The court answered the loss of wages and benefits portion of the verdict by placing the amount of $14,907.35 next to the loss of wages question.

In its charge to the jury, the trial court specifically instructed them that damages for emotional distress could be awarded only if all four elements of the intentional infliction of emotional distress tort were found in Bachand's favor.

Thus, in motions after verdict, Connecticut General moved for judgment of dismissal on the intentional infliction of emotional distress portion of the claim because Bachand failed to establish all the elements of

the alleged tort. Additionally, Connecticut General moved to dismiss the handicap discrimination and backpay portions of the claim because, as it had argued on other motions, there was a DILHR action already in existence.

The court concluded that the jury verdict compelled the dismissal of the cause of action for intentional infliction of emotional harm. Nonetheless, the court denied the remainder of Connecticut General's motion for judgment on the verdict, instead granting Bachand's motion for judgment on the verdict in the amount of approximately $100,000 representing the backpay and the emotional distress and punitive damages amount specified by the jury. The trial court ruled that "emotional harm damages can be recovered in a sec. 111.32, Stats., action under aggravated circumstances" and that such circumstances were present in this case notwithstanding the dismissal of the separate intentional tort claim and also notwithstanding the fact that the jury specifically had been instructed that such damages could be awarded only if the intentional tort were present.

In deciding this case, this court's task is to determine whether the circuit court was jurisdictionally foreclosed from resolving the dispute. In making our determination, we will separately discuss each of the remedies awarded Bachand in the circuit court action and will decide whether the circuit court had jurisdiction to make such awards.

## BACKPAY

The Wisconsin Fair Employment Act was designed to discourage discriminatory firing. Remedies based on violation of this act are therefore statutory remedies and not common law remedies. *Ross v. Ebert,* 275 Wis. 523, 82 N.W.2d 315 (1957). When the legislature creates a

right, the statutory remedies for violation of that right are exclusive. *State ex rel. Russell v. Board of Appeals*, 250 Wis. 394, 397, 27 N.W.2d 378, 379 (1947). Where there is a new statutory remedy provided by amendment, that remedy is also exclusive. *In re Jeness*, 218 Wis. 447, 450, 261 N.W. 415, 416 (1935). Thus, since the Wisconsin Fair Employment Act specifically states that all remedies are to be pursued through DILHR, sec. 111.33(1), Stats.,[2] that avenue is the exclusive means by which the remedy may be pursued.

Bachand argues, correctly, that there is an exception to the general rule. The exception is set out in *Yanta v. Montgomery Ward & Co., Inc.*, 66 Wis.2d 53, 224 N.W. 2d 389 (1974). In that case, the plaintiff instituted proceedings before DILHR alleging an act of sex discrimination. DILHR awarded prospective relief because that was the only statutory remedy available at the time. Following the award for prospective relief, the plaintiff commenced a civil suit requesting lost wages and damages for emotional and mental anguish and personal humiliation, among other things. The employer demurred, claiming there was no statutory remedy for lost wages. The trial court overruled the demurrer, and the employer appealed.

By the time the case reached the supreme court, the Fair Employment Act had been amended so as to allow backpay. The court indicated that "the narrow question now before us is whether this court can now take

---

[2] Section 111.33(1), Stats. (1977), states in pertinent part:

Except as provided under sub. (2), this subchapter shall be administered by the department. The department may make, amend and rescind such rules as are necessary to carry out this subchapter. The department or the commission may, by such agents or agencies as it designates, conduct in any part of this state any proceeding, hearing, investigation or inquiry necessary to the performance of its functions.

cognizance of the change in legislative attitude, so as to permit the plaintiff to pursue a cause of action for lost wages." *Yanta, supra,* at 61, 224 N.W.2d at 393.

Implicit in the court's framing of the issue was the realization that while the legislature now mandated a benefit in the form of lost wages for discriminatory acts, that relief was unavailable from the administrative agency at the time the plaintiff pursued her DILHR action. Therefore, the plaintiff in *Yanta* had a right and a remedy but no forum. The supreme court concluded that it was the will of the legislature to allow a suit for lost wages. It inferred that since the new remedy was not available to the plaintiff in the DILHR action because the administrative remedy had already been terminated, it could be tried as a private action in the circuit court. The supreme court cautioned that judicial creation of a private cause of action would be contrary to legislative intent. The court stated, however, that in allowing the plaintiff to pursue a civil action, it was not creating a judicial cause of action. It was only giving the plaintiff a forum to pursue her rightful remedy as mandated by the legislature.

Thus, *Yanta* teaches the following. When the legislature provides a new remedy for unlawful discrimination, the remedy is exclusive except where: (1) the legislature provides a new remedy (backpay in this instance); (2) for a proven statutory violation which previously was not available in the administrative process, and (3) which new remedy was not available to the plaintiff in the DILHR action simply because the amendment came too late. Therefore, although the statute specifically directed all remedies to be pursued through DILHR, the amendment of the statute to permit the awarding of backpay mandated relief even if the administrative avenue was not available because of timing.

For Bachand to be able to pursue his private cause of action for lost wages due to a violation of the Wisconsin Fair Employment Act, he must show that the statutory remedy of lost wages was unavailable to him through DILHR. He cannot do so. It is true that Bachand's discriminatory firing took place prior to the amendment of the Fair Employment Act allowing backpay. However, by the time Bachand's DILHR proceedings were heard by an examiner, the amendment allowing for lost wages had already become effective. Therefore, backpay was available through DILHR. In fact, the DILHR examiner awarded backpay. This award was made prior to Bachand's commencement of the action in circuit court. Thus, Bachand does not come within the exception to the rule expressed in *Yanta.*

Bachand claims, however, that even though the remedy for lost wages was available in the DILHR proceeding and even though DILHR actually awarded damages for lost wages, the legislature expressed an intention, in its amendment, to allow private causes of action in circuit court in addition to pursuing the same remedy through DILHR. Bachand calls it an "implied right of action." He claims that there is an intention, demonstrated by the amendment, to permit a private cause of action for all pre-amendment violations, while maintaining the DILHR proceeding as the exclusive remedy for all post-amendment violations. This, he claims, is a legislative intention "contrary" to the general intent that the exclusive remedies be pursued solely through DILHR.

We cannot read the statute as a clear expression of intent to divide jurisdiction between the administrative agency and the courts, or even as an intention to provide concurrent jurisdiction. We are bound to read the statute so as to avoid absurd results. *Wisconsin's*

*Environmental Decade, Inc. v. Public Service Commission,* 84 Wis.2d 504, 528, 267 N.W.2d 609, 622 (1978). DILHR's entire administrative proceeding is designed to address factual issues. The agency is directed to enforce violations of the Fair Employment Act. Under this regulatory scheme, resolution of these issues has been placed within DILHR's special competence. DILHR affords a systematic method of fact-finding and policy making. It is also the proper forum to provide the backpay remedy. The legislature intended DILHR to be able to afford "the party adequate relief." *Nodell Investment Corp. v. City of Glendale,* 78 Wis.2d 416, 426, 254 N.W.2d 310, 316 (1977). Here, a parallel record would result in duplicitous proceedings and judicial inefficiency. This is true for pre-amendment violations as well as post-amendment firings. Our reading of the amendment to the Fair Employment Act is that it is not designed to create a private cause of action as long as an adequate remedy is otherwise available in a DILHR proceeding.

Bachand next argues that even if the legislature did not create an implied right of action in the circuit courts for pre-amendment violations, he did not know that at the time he filed his circuit court action. He notes that *Chicago & North Western Railroad v. Labor & Industry Review Commission,* 91 Wis.2d 462, 283 N.W. 2d 603 (1979), *aff'd,* 98 Wis.2d 592, 297 N.W.2d 819 (1980), was not decided until August 16, 1979, approximately two weeks after the verdict was returned in the circuit court action. In that case, the court of appeals ruled the department had authority to retroactively grant backpay in cases involving discrimination arising prior to the effective date of the new law.

Bachand claims he could not have known the statutory remedy was available through DILHR because the agency's authority to grant lost wages for pre-amendment

violations had not yet been established by any appellate court. He claims, therefore, that his only recourse was to seek a private cause of action in circuit court in the event that DILHR did not have retroactive authority.

Although not fully developed either in his brief or oral argument, Bachand's contention is that where full relief from the agency either cannot be obtained or is questionable, then he may seek the desired relief from the circuit court, and the circuit court, for reasons of equity, properly has jurisdiction. The underlying policy contention is that justice requires every litigant to have his day before a court competent to afford adequate or complete relief. Because relief was in doubt when he commenced his action, Bachand argues he had valid reason for commencing a judicial proceeding and the trial court had a valid reason for recognizing his claim. Therefore, the trial court, by reason of equity, had jurisdiction concurrent with DILHR.

We are not swayed by Bachand's argument. He presupposes that even if an appellate court were to rule that DILHR did not have the authority to retroactively grant backpay in pre-amendment cases, the circuit courts *would* have that power.

The Fair Employment Act could not be read to allow the circuit court to be the forum for a cause of action if DILHR would be foreclosed. The amendment's retroactivity is controlled by the language of the statute. If the statute, either on its face or through legislative intent, denies the agency authority to retroactively award backpay, then the legislature is not going to grant the circuit court that authority denied to its own agency unless its contrary intent is expressly stated. If the legislature did not intend that the amendment apply to discriminatory acts occurring before the effective date, that intent would limit the circuit court as well as

DILHR. Therefore, Bachand could not reasonably have doubted the availability of a cause of action or right of remedy in DILHR and at the same time asserted that there was such a right of action in the circuit court.

We conclude that Bachand could not entertain a circuit court action if he were unsure whether full relief could be obtained before DILHR. Therefore, the trial court erred when it exercised jurisdiction to hear the backpay issue.

## EMOTIONAL DISTRESS

For the same reasons, we hold the trial court was jurisdictionally foreclosed from awarding compensatory or punitive damages for emotional distress. Quite simply, the Fair Employment Act does not provide a remedy for emotional distress resulting from a discriminatory firing. The statute does not provide relief either from DILHR or through a private cause of action.

Bachand and the trial court were apparently under the impression that the statute *was* designed to require an employer to compensate an employee for causing emotional distress harm. We have read the entire statute and find no language which even implies that the statute was designed to create a remedy for emotional harm damages. The court in *Yanta* made this clear when it stated:

The statutes expressly refer to harm from loss of wages; they do not refer to emotional or reputation harm or attorney's fees. This court has held that attorney's fees may not be recovered as an item of damages. Furthermore, we have limited the right to recover for emotional harm in the absence of physical injuries to certain unusual and aggravated circumstances not alleged in the complaint here. [Footnotes omitted.]

*Yanta, supra,* at 62–63, 224 N.W.2d at 394. The court therefore noted that since the act did not expressly authorize monetary damages other than backpay, they could not be awarded. The court said:

We limit plaintiff's right to damages to the right to seek recovery for lost wages rather than for emotional harm, harm to reputation, or attorney's fees.

*Id.* at 62, 224 N.W.2d at 394.

Bachand, however, asks us to interpret the above quoted paragraphs as authority for the proposition that, in fact, a remedy for emotional distress was created by the Fair Employment Act. He underlines the phrase, "we have limited the right to recover for emotional harm in the absence of physical injuries to certain unusual and aggravated circumstances not alleged in the complaint here," as judicial recognition of a statutory remedy for emotional harm as long as he also proves the emotional harm damages were caused by unusual and aggravated circumstances.

We cannot accept Bachand's rationale. We construe the supreme court's language to mean that damages for emotional harm might be recoverable for a separate tort of intentional infliction of emotional distress if correctly alleged in the complaint and proven at trial. This separate tort for intentional infliction of emotional distress is not in any way related to the Fair Employment Act.

We interpret the court as merely stating that in past cases, the court had recognized an intentional tort of emotional distress in certain situations.[3] In the ab-

---

[3] *See, e.g., McKissick v. Schroeder,* 70 Wis.2d 825, 235 N.W.2d 686 (1975); *Laska v. Steinpreis,* 69 Wis.2d 307, 231 N.W.2d 196 (1975); *Alsteen v. Gehl,* 21 Wis.2d 349, 124 N.W.2d 312 (1963). The court in *Alsteen, supra,* at 359–60, 124 N.W.2d at 318, estab-

sence of contrary statutory or contract provisions, an employer may discharge his employees for any reason without incurring liability. *Kovachik v. American Automobile Assn.*, 5 Wis.2d 188, 92 N.W.2d 254 (1958). The statement of the court in *Yanta* may be recognition of an exception to the general rule. If there is an intentional interference with the existing contractual rights of an employee, done with the purpose of inflicting emotional distress, and if considered outrageous or intolerable, an employee may be entitled to a greater degree of protection from insults and outrage than if he were a mere stranger. *See Harris v. Jones,* 281 Md. 560, 569, 380 A.2d 611, 615 (1977) ; *see* F. Harper and F. James,

lished the following four prerequisites to recovery for the intentional infliction of emotional distress:

(1) That the defendant behaved as he did for the purpose of causing emotional distress for the plaintiff;

(2) That the defendant's conduct was extreme and outrageous;

(3) That the defendant's conduct was a cause-in-fact of the injury, and

(4) That the plaintiff suffered an extreme disabling emotional response to the defendant's conduct.

Although no Wisconsin cases have dealt with the intentional infliction of emotional distress in an employer-employee context, a somewhat analogous situation has arisen involving an employer-employee-third party relationship. A cause of action is maintainable for unlawful interference with an employment contract terminable at will. In *Mendelson v. Blatz Brewing Co.,* 9 Wis.2d 487, 491, 101 N.W.2d 805, 807 (1960), it was stated that: "[O]ne who, *without a privilege to do so,* induces or otherwise purposely causes a third person [employer] not to perform a contract with another, . . . is liable to the other [employee] for the harm caused thereby." *Id.,* (quoting 4 Restatement of Torts §766 (1939)). *See also, Lorenz v. Dreske,* 62 Wis.2d 273, 214 N.W.2d 753 (1974) ; *Johnson v. Aetna Life Insurance Co.,* 158 Wis. 56, 147 N.W. 32 (1914). Thus, it is apparent that persons in the employment arena, although relatively unrestrained in their contractual relations, may not completely disregard the rights of the persons with whom they deal.

Jr., The Law of Torts §9.1, at 666–67 (1956); W. Prosser, Law of Torts §12, at 56 (4th ed. 1971). *See also Alsteen v. Gehl*, 21 Wis.2d 349, 124 N.W.2d 312 (1963).

We therefore interpret the language in *Yanta* as acknowledging, without deciding, that recovery for emotional harm in the absence of physical injuries may be possible if the *Alsteen* criteria are met. However, even if recoverable, that recovery is separate and distinct from any remedy sanctioned by the Fair Employment Act. Under the statute, no damages for mental distress, humiliation and the like are available.

In this case, the trial court observed before trial that there were two causes of action. One cause of action was for statutory backpay. The second cause of action was the independent tort of emotional distress. The trial court correctly noted that a major element of the tort for emotional distress was that the conduct causing the emotional distress must be intentional and done with the purpose of inflicting the emotional distress. The jury found that while the discriminatory act was extreme and outrageous, it was not done with intent to inflict emotional distress. Therefore, the separate and independent tort of emotional distress was not found by the jury. By accepting Bachand's interpretation that *Yanta* created a new cause of action for emotional distress without first having to prove that the conduct was done with the purpose of inflicting emotional distress, the trial court did what is best described by Connecticut General in its brief as follows:

Obviously, what the trial court did in entering judgment on the verdict was to piece together various answers from the special verdict so as to create a cut and paste version of a new cause of action. The trial court apparently reasoned that a fair employment act violation plus part

of an *Alsteen v. Gehl* verdict equaled the new Bachand v. Connecticut General tort.

We agree with Connecticut General that the trial court erred. Since there is no statutory remedy for emotional distress damages, we reverse the compensatory damages award.

We also reverse the punitive damages portion of the verdict. Because compensatory damages cannot be given in this action, neither can punitive damages. *Widemshek v. Fale,* 17 Wis.2d 337, 340, 117 N.W.2d 275, 276 (1962).

Accordingly, we reverse this case and remand it to the circuit court with directions to dismiss the case in its entirety.

*By the Court.*—Judgment reversed and cause remanded with directions.