Adrian R. BOURQUE, Plaintiff-Appellant,†

v.

The WAUSAU HOSPITAL CENTER and the
Wausau Medical Center, Defendants-
Respondents,

Terrence O'ROURKE, John Olinger, Philip Aulwes
and W.K. Dernbach, M.D., Defendants.

Court of Appeals

*No. 87–0431. Submitted on briefs March 29, 1988.—Decided
June 28, 1988.*

(Also reported in 427 N.W.2d 433.)

† Petition to review denied.

For plaintiff-appellant there were briefs by *Michael R. Fox* and *Mary E. Kennelly* of *Fox, Fox, Schaefer & Gingras, S.C.* of Madison.

For defendant-respondent, The Wausau Medical Center, there was a brief by *Randall J. Sandfort* and *Cassandra B. Westgate* of *Terwilliger, Wakeen, Piehler & Conway, S.C.* of Wausau.

For defendant-respondent, Wausau Hospital Center, Inc., there was a brief and supplemental appendix by *Jack D. Walker* and *John H. Zawadsky* and *Valeree D. Marek* of *Melli, Walker, Pease & Puhly, S.C.* of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Adrian Bourque appeals a dismissal of his retaliatory discrimination claims. The trial court concluded that the Wisconsin Fair Employment Act (WFEA), sec. 111.31–111.395, Stats., provided the exclusive remedy for Bourque's claims and that the statute delegated jurisdiction exclusively to the Department of Industry, Labor and Human Relations (DILHR). We agree that Bourque may not bypass legislatively mandated prerequisites for judicial relief, and affirm the dismissal.

Bourque is a radiation therapist employed by Wausau Medical Center. By agreement, the medical center provides radiology services to Wausau Hospital Center. During 1981 through 1983, the hospital center allegedly received a number of complaints concerning Bourque. The complaints included unsympathetic or uncaring behavior toward patients; extended and unscheduled absences from the department; scheduling non-emergency patient procedures in a manner causing unnecessary employee overtime; criticizing hospital management and policies in the presence of patients and hospital employees; and intimidation of hospital employees. The hospital center administration also allegedly received complaints from the employees in the radiation therapy section that they could not tolerate working with Bourque because of his mistreatment of them and his disregard for the care of his patients.

In January, 1983, Terrence O'Rourke, president of the hospital center, wrote a letter to the medical center suggesting that they consider hiring a second radiation therapist. The medical center then unsuccessfully attempted to recruit a second radiation therapist; however, no additional therapist was hired.

On February 15, 1983, Bourque applied to become an active member of the medical staff of the hospital center. On July 20, 1983, O'Rourke sent a memo to the bylaws/credentials committee recommending that action on Bourque's application be deferred for one year based on Bourque's behavior. On September 28, 1983, the bylaws/credentials committee voted to recommend the deferral of Bourque's advancement to active staff status. The committee also adopted seven conditions pertaining to Bourque's conduct during the deferral period.

On October 19, 1983, Steven Stoddard, president of the medical staff, invited Bourque to a meeting of the medical staff to present his views on the committee's decision to defer his advancement. At this meeting, Bourque presented what was described as a rambling, unconnected narrative regarding an equal rights case involving the hospital center. Bourque referred to the "ineptitude" of the hospital's legal counsel, and stated that the hospital administration was "raping" its employees. Bourque also allegedly stated, "You will soon find out who the best legal mind is in town," then slammed the door and left the room. After Bourque left the meeting, and following further discussion, it was recommended that Bourque see a psychiatrist.

On May 19, 1984, Bourque commenced a lawsuit in federal court, alleging a conspiracy under 42 U.S.C., sec. 1985(2), Title VII of the Civil Rights Act of 1964,

as amended, and the Age Discrimination in Employment Act. Bourque also claimed pendent state violations of secs. 134.01 and 943.30, Stats., and tortious interference with contract. The federal lawsuit was dismissed on June 5, 1985.

On July 11, 1985, Bourque filed an action in state court. Bourque alleged that the medical center threatened to hire a second radiation therapist after he became involved in various equal rights proceedings concerning other hospital employees. Bourque also alleged that his staff status advancement was deferred, and his employment contract was breached because of this involvement.

Although Bourque presented numerous causes of action, the trial court found that the claims were entirely based on the alleged retaliation. The court concluded that the WFEA provided the exclusive remedy for retaliatory discrimination, and that the statute provided that administrative remedies must be exhausted prior to court action. Accordingly, the trial court dismissed the action for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. The trial court alternatively concluded that summary judgment would also be appropriate because Bourque suffered no more than de minimus damages and the record contained sufficient undisputed evidence supporting the defense.

On appeal, five alleged causes of action remain.[1] Counts one and eight allege violations of sec. 134.01,

[1] On July 21, 1987, we entered an order determining that Bourque had appealed only that portion of the judgment in favor of the medical center and the hospital center. We granted the defendants' motion to strike Bourque's brief and granted Bourque leave to file a new brief that made no argument regarding his

which prohibits conspiracies to interfere with business relationships. Counts two and seven claim violations of sec. 943.30, a criminal statute prohibiting certain types of threats and extortion, and count four alleges common-law breach of contract. Bourque did not claim violations of the WFEA.

Bourque argues that the statutory remedy provided by the WFEA does not preempt other statutory or common-law actions in state court. The defendants argue that where there is a comprehensive remedial statute such as the WFEA, recognition of other statutory or common-law actions would circumvent the legislative mandate for administrative solutions and impose serious problems regarding the extent of the remedies to be provided.

Whether the WFEA provides the exclusive remedy in the present case is basically a question of legislative intent. In ascertaining that intent, it is a fundamental principle of statutory construction that absent a legislative indication to the contrary, the legislature is deemed to have intended a comprehensive statutory remedy to be exclusive. *See State ex rel. Russell v. Board of Appeals,* 250 Wis. 394, 397, 27 N.W.2d 378, 379 (1947). Furthermore, where the statutory scheme for relief provides for administrative proceedings and judicial review of the administrative decision, the plaintiff must exhaust the administrative remedy before recourse to the courts. *See Bachand v. Connecticut Gen. Life Ins. Co.,* 101 Wis. 2d 617, 623–24, 305 N.W.2d 149, 152 (Ct. App. 1981).

The WFEA forbids retaliatory discrimination against any individual because he has assisted in an

claims of defamation and tortious interference with contract, alleged solely against the individual defendants.

equal rights proceeding. Section 111.322(3), Stats. The WFEA also provides that all remedies based on violations of the Act are to be pursued through DILHR, and that the findings and orders of the commission are subject to judicial review under ch. 227. *See* secs. 111.375(1) and 111.395, Stats.

Bourque, however, relies on *Bachand* to support his assertion that the statutory remedy provided by the WFEA for retaliatory discrimination is not exclusive of other statutory or common-law remedies. We disagree. *Bachand* held that the procedures contained in the WFEA provide the exclusive remedy for claims of discrimination. On this basis, we dismissed Bachand's private cause of action for violation of the WFEA, as well as his claim for emotional distress:

> For the same reasons, we hold the trial court was *jurisdictionally foreclosed* from awarding compensatory or punitive damages for emotional distress. Quite simply, the Fair Employment Act does not provide a remedy for emotional distress resulting from a discriminatory firing. The statute does not provide relief either from DILHR *or through a private cause of action.* .

*Id.* at 629, 305 N.W.2d at 154 (emphasis added).
█

*Bachand* noted that a discriminatory allegation may state a separate cause of action if the conduct was "separate and distinct" from the conduct prohibited by the WFEA. *Id.* at 630–32, 305 N.W.2d at 155. Here, Bourque's allegation that the hospital center implicitly promised that he would be their only full-time radiation therapist may state a separate and distinct cause of action for breach of contract. Nevertheless, the claim was properly dismissed since Bourque

concedes another radiation therapist was not hired.[2] Contrary to Bourque's assertion, however, the other alleged causes of action in the present case are not separate and distinct from the conduct prohibited by the WFEA. Indeed, Bourque's complaint contains preliminary "FACTUAL ALLEGATIONS" explicitly alleging that "[b]ut for his participation in ... ERD and EEOC complaints, [Bourque] would not have been subjected to the economic threats, denial of staff privileges and compulsory psychiatric examination ...." Each of Bourque's causes of action incorporates these preliminary allegations. Furthermore, Bourque's secs. 134.01 and 943.30 causes of action themselves allege that the defendants' actions were based on retaliatory discrimination. Accordingly, we agree with the trial court that although Bourque labels his numerous claims as "separate and distinct" causes of action, the complaints actually state a cause of action for retaliatory discrimination. The test of whether there is more than one cause of action is

[2]Damages for breach of employment contract are limited in Wisconsin to lost wages and expenses incurred in obtaining new employment. Damages for emotional distress, humiliation, loss of reputation, and attorney fees are not permitted. *See Mursch v. Van Dorn Co.,* 627 F. Supp. 1310, 1317 (W.D. Wis. 1986). Because Bourque's employment was not terminated, Bourque suffered no damages seeking new employment. At best, therefore, Bourque's damages would be limited to the $400 he claims as the result of one day's loss of pay because he was required to see a psychiatrist. However, Bourque fails to supply the causal nexus between the lost wages and the alleged breach of contract. Indeed, Bourque's seventh cause of action claims that as a result of the alleged sec. 943.30 violation, Bourque "lost the income for the day he came to Madison that he would have received had he been on the job." Therefore, Bourque suffered no recognizable damages as a result of the alleged breach of contract.

whether there is more than one primary right sought to be enforced or one subject of controversy presented for adjudication. *Shelstad v. Cook,* 77 Wis. 2d 547, 556, 253 N.W.2d 517, 521 (1977). Here there is but one cause of action. Bourque's remedy is therefore properly pursued through DILHR.

Bourque insists that decisions from other jurisdictions "have uniformly held that state fair employment laws supplement rather than supplant traditional common law remedies." We are unpersuaded. We recognize that other courts, including the United States District Courts in Wisconsin, have come to somewhat differing conclusions. *Compare, e.g., Elbe v. Wausau Hospital Center,* 606 F. Supp. 1491 (W.D. Wis. 1985) (allowing private cause of action) with *McCluney v. Jos. Schlitz Brew. Co.,* 489 F. Supp. 24 (E.D. Wis. 1980) (precluding private cause of action).

However, the more recent decisions of the district courts in Wisconsin have reexamined and discredited the prior decisions favoring duplicative remedies. For example, in *Mursch v. Van Dorn Co.,* 627 F. Supp. 1310, 1313 (W.D. Wis. 1986), the court reexamined its conclusion in *Elbe* and concluded that a private right of action does not exist under the WFEA. It pointed out that those courts that have rejected *Bachand's* narrow interpretation of the general rule based their decisions primarily on the assumption that the Wisconsin Supreme Court affirmed the existence of a private right of action in several recent cases. However, on review of those decisions, the court concluded that neither of the cases warranted a departure from the clear directive set forth in the *Bachand* decision. *Mursch,* 627 F. Supp. at 1313–14; *Boczon v. Northwestern Elevator Co.,* 652 F. Supp. 1482, 1484–85 (E.D. Wis. 1987).

*Mursch* significantly relied upon the fact that the Wisconsin Supreme Court recently reaffirmed the general rule of exclusivity of statutory remedies in *Brockmeyer v. Dun & Bradstreet,* 113 Wis. 2d 561, 576 n. 17, 335 N.W.2d 834, 842 n. 17 (1983). The federal district court concluded that the general rule of exclusivity of statutory remedies "is clearly the law of Wisconsin ...." *Mursch,* 627 F. Supp. at 1314.

*Mursch* also held that when administrative redress is available, one cannot bring a suit for wrongful discharge unless one has exhausted administrative remedies. *Id.* at 1315 (citing *Koehn v. Pabst Brew. Co.,* 763 F.2d 865 (7th Cir. 1985)). In *Koehn,* the plaintiff claimed that he was fired as a result of an injury sustained in the course of his employment, violating the common-law of Wisconsin. In a per curiam opinion, the seventh circuit concluded that administrative remedies were available pursuant to the WFEA, and that Koehn made no effort to invoke them. The court stated that the "thrust of Wisconsin law on the subject of exhaustion of remedies is too clear to give us any alternative but to affirm [the district judge's dismissal]." *Id.* at 866. Having failed to seek administrative redress, Koehn was precluded from bringing a lawsuit. *Id.*

As stated in *McCluney,* 489 F. Supp. at 26–27:

> It would be contrary to precedent to assume that Wisconsin courts would imply a private cause of action to uphold a public policy when the state legislature has already provided enforcement mechanisms to vindicate such policies. The Wisconsin supreme court has consistently held that where the legislature provides statutory remedies for the enforcement of particular rights, those remedies should be exclusive.

Insofar as the plaintiff has alleged that his firing was in bad faith, such bad faith arose from the alleged discriminatory motive underlying the plaintiff's dismissal. For the reasons stated above, I do not believe that Wisconsin courts would imply a cause of action directed at such motives in light of the extensive anti-discriminatory enforcement process provided by the Fair Employment Act. (Citations omitted.)

■

We therefore conclude that the legislature intended the remedy for retaliatory discrimination created by the WFEA to be exclusive under the facts of this case. The legislature intended to provide DILHR the ability to afford adequate relief. *Bachand,* 101 Wis. 2d at 627, 305 N.W.2d at 153. We decline to allow Bourque to bypass, under the guise of allegedly separate and distinct statutory and common-law actions, the administrative mechanisms created by the legislature to administer and resolve discriminatory claims. Absent legislative indication to the contrary, the WFEA provides the exclusive remedy for retaliatory discrimination.

*By the Court.*—Judgment and order affirmed.