STATE EX REL. DURANDO, Respondent, vs. STATE ATHLETIC COMMISSION, Appellant.

*February 6—March 6, 1956.*

192

For the appellant there was a brief by the *Attorney General* and *Stewart G. Honeck,* deputy attorney general, attorneys, and *Kenneth M. Plaisted,* law examiner, of counsel, and oral argument by *Mr. Honeck* and *Mr. Plaisted.*

For the respondent there was a brief and oral argument by *Dominic H. Frinzi* of Milwaukee.

CURRIE, J.    The powers and duties of the State Athletic Commission are prescribed by ch. 169, Stats.  Sec. 169.13 of such chapter specifies the procedure for conducting boxing exhibitions, and sub. (7) thereof reads as follows:

"The commission may allow or provide for decisions upon exhibitions held under this chapter to be made by the referee or by the referee and two judges appointed by the commission under regulations prescribed by the commission."

Among the rules adopted by the commission for the conduct of boxing exhibitions is Rule 121, which in part provides:

"When a boxer is cleanly knocked down, in the opinion of the referee, he shall be required to take a count of '8' whether or not he has regained his feet before the count of '8' has been reached. This rule shall apply to amateur and professional boxers.

"Should the contestant who is down arise before the count of '10' is reached and again go down due to weakness or unable to arise the referee shall continue to keep counting where he left off."

It is the contention of Durando that, if the referee had complied with such rule in the fourth round of the bout between Durando and Mueller, the referee would have commenced his second count of Mueller being down with "nine" instead of "one," and Mueller would then have been counted out thereby giving the decision to Durando.

No statute or rule promulgated by the commission gave it any express authority to reverse a decision of the referee in a boxing exhibition. Counsel for Durando urge that such power to reverse is to be inferred by implication from the wording of sub. (7) of sec. 169.13, Stats., quoted above. We do not so construe such statute. While this statute is broad enough to empower the commission to adopt a rule giving it the right to reverse a referee's decision if he fails to follow the rules laid down by the commission, the latter has not seen fit to adopt such a rule.

By its conclusion of law No. 1, the commission has in effect interpreted its rules to mean that an error by the referee in the application of Rule 121 may not be reversed by the commission in the absence of a showing of fraud on the part of the referee. Such an administrative interpretation of its own rules by an administrative agency, such as the commission in the instant case, should be accorded great weight by the courts "unless it is plainly erroneous or inconsistent" with the regulations so interpreted. *Bowles v. Seminole Rock & Sand Co.* (1945), 325 U. S. 410, 414, 65 Sup. Ct. 1215, 89 L. Ed. 1700. See also Davis, Administra-

tive Law, p. 910, sec. 253. We do not consider the instant interpretation to be either plainly erroneous or inconsistent with the commission's rules. On the issue of consistency, we believe it to be a matter of common knowledge that the decisions of judges, umpires, or referees in athletic contests and games are to be final and not subject to reversal unless the rules under which the contest or game is staged plainly so provide.

Counsel for Durando urges that the following provision contained in sec. 169.10, Stats., "The commission may be, and at least one inspector shall be present at all exhibitions and see that the rules are strictly observed," expressly confers jurisdiction upon the commission to reverse the referee's decision in the instant case because of the latter's failure to properly observe Rule 121. While such statute may confer some superintending authority upon the commission during the progress of a boxing exhibition to cause the referee to properly observe the commission's rules governing the contest, it does not confer any express authority upon the commission to reverse a referee's decision after the exhibition has been concluded.

We, therefore, conclude that the commission properly determined that it did not possess any authority to reverse the referee's decision.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant the motion of the State Athletic Commission to quash the writ.