Christopher ASLAKSON,
Plaintiff-Respondent-Petitioner,

v.

GALLAGHER BASSETT SERVICES, INC.,
Defendant-Appellant,

WISCONSIN WORKER'S COMPENSATION
UNINSURED EMPLOYER'S FUND,
Defendant.

Supreme Court

*No. 2004AP2588. Oral argument November 1, 2006.
—Decided March 29, 2007.*

2007 WI 39

(Also reported in 729 N.W.2d 712.)

For the plaintiff-respondent-petitioner there were briefs by *Daniel C. Arndt* and *Arndt, Buswell & Thorn, S.C.,* Sparta, and oral argument by *Daniel C. Arndt.*

For the defendant-appellant there was a brief by *David A. Piehler, Eric C. Pease,* and *Piehler & Strande, S.C.,* Wausau, and oral argument by *David A. Piehler.*

An amicus curiae brief was filed by *Jennifer Sloan Lattis,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlater,* attorney general, on behalf of the Department of Workforce Development.

An amicus curiae brief was filed by *John B. Edmondson, Jennifer Lee Edmondson,* and *Edmonson Law Office,* Appleton; *Michael H. Gillick* and *Gillick, Wicht, Gillick & Graf,* Milwaukee, on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This is a review of a published decision of the court of appeals on interlocutory appeal, reversing an order of the circuit

court for Dane County, Moria Krueger, Judge.[1] The circuit court's order denied Gallagher Bassett Services, Inc.'s motion to dismiss the complaint, holding that Christopher Aslakson's tort claim of bad faith against Gallagher Bassett Services, Inc. was not barred by the Worker's Compensation Act. The circuit court dismissed the complaint against the Wisconsin Worker's Compensation Uninsured Employers Fund on the ground of sovereign immunity.

¶ 2.    The court of appeals reversed the order of the circuit court, holding that Wis. Stat. §§ 102.81(1)(a) and 102.18(1)(bp) (2003–04)[2] and Wis. Admin. Code § DWD 80.62(7)(b) (Sept. 2005) establish Christopher Aslakson's exclusive remedy for bad faith claims against Gallagher Services and that these provisions also disallow any recovery of tort damages for bad faith from Gallagher Services.

¶ 3.    The liability of the Uninsured Employers Fund is not at issue here. The Uninsured Employers Fund is a "nonlapsible trust" fund created by the legislature as part of the Worker's Compensation Act.[3] The Uninsured Employers Fund provides compensation to employees who suffer injuries for which their uninsured employer is liable.[4]

¶ 4.    The Department of Workforce Development is the administrator of the Wisconsin worker's compen-

---

[1] *Aslakson v. Gallagher Bassett Servs., Inc.,* 2006 WI App 35, 289 Wis. 2d 664, 711 N.W.2d 667.

[2] All references to the Wisconsin Statutes are to the 2003–2004 version unless otherwise noted.

[3] Wis. Stat. § 102.80(1). The Uninsured Employers Fund was created in 1989 by the legislature to pay benefits on valid worker's compensation claims of employees of uninsured employers.

[4] *See* Wis. Stat. § 102.81(1)(a).

sation system.[5] The Department retained Gallagher Services under Wis. Stat. § 102.81(2) "to process, investigate and pay claims" under the Uninsured Employers Fund.[6] Thus, Gallagher Services is the third-party administrator of the Uninsured Employers Fund; we shall often refer to Gallagher Services as the administrator of the Uninsured Employers Fund. The regulations of the Department of Workforce Development refer to the administrator of the Uninsured Employers Fund as an agent of the Department.[7]

¶ 5. Christopher Aslakson, the plaintiff, received (after significant delay) substantial worker's compensation payments from the Uninsured Employers Fund for his job-related injuries and does not seek additional worker's compensation benefits in this proceeding. Gallagher Services handled the plaintiff's claim for worker's compensation. In the present case, the plaintiff brings a bad faith tort action against Gallagher Services for an injury allegedly arising out of the bad faith conduct of Gallagher Services in its capacity as

---

[5] Wis. Stat. § 102.14(1).

[6] Wisconsin Stat. § 102.81(2) provides in relevant part:

The department may retain an insurance carrier or insurance service organization to process, investigate and pay claims under this section and may obtain excess or stop-loss reinsurance with an insurance carrier authorized to do business in this state in an amount that the secretary determines is necessary for the sound operation of the uninsured employers fund.

Gallagher Services maintains a separate and distinct business from the Department and the Uninsured Employers Fund as an insurance service organization.

[7] " 'Agent' means a third-party administrator or other person selected by the department to assist in the administration of the uninsured employers fund program." Wis. Admin. Code § DWD 80.62(2)(a).

administrator of the Uninsured Employers Fund and thus as an agent of the Department.

¶ 6.  The question presented is whether Wis. Stat. § 102.81(1)(a), read in conjunction with § 102.18(1)(bp) of the Worker's Compensation Act and Wis. Admin Code § DWD 80.62(7)(b), precludes an employee's bad faith tort claim against the administrator of the Uninsured Employers Fund (an agent of the Department) for its misconduct while processing the worker's compensation claim. Our answer, like that of the circuit court, is No.

¶ 7.  For the reasons set forth, we conclude that the text of Wis. Stat. § 102.81(1)(a) and § 102.18(1)(bp) and Wis. Admin. Code § DWD 80.62(7)(b) do not bar the plaintiff's bad faith tort claim against Gallagher Services. Properly read, these provisions apply as follows in the present case:

¶ 8.  The Department or its agent must pay an amount equal to the worker's compensation owed to an injured employee for an injury for which the uninsured employer is liable. The Department and its agent are not, however, liable to pay an injured employee of an uninsured employer for the penalty statutorily imposed on the employer for bad faith conduct.

¶ 9.  The provisions at issue do not in any way govern the plaintiff's bad faith tort action against Gallagher Services. The Worker's Compensation Act does not provide any remedy to the plaintiff for his bad faith claim against Gallagher Services for its alleged bad faith conduct in processing a worker's compensation claim, let alone an exclusive remedy.

¶ 10.  The injury for which the plaintiff seeks relief in this tort action is the injury caused by Gallagher Services' alleged bad faith handling of the plaintiff's worker's compensation claim against an un-

insured employer. This injury is separate and distinct from the original injury for which the uninsured employer and the Department are liable under the Worker's Compensation Act.

¶ 11. Our case law recognizes a bad faith tort claim against a worker's compensation insurer for an injury separate and distinct from the initial injury for which an employer is liable under the Act, even though the bad faith occurred during the processing of a worker's compensation claim. The same reasoning applies to allow the plaintiff to pursue a bad faith tort action against Gallagher Services.

¶ 12. Accordingly, we reverse the decision of the court of appeals and affirm the order of the circuit court. We remand the cause to the circuit court to reinstate the complaint against Gallagher Services.

I

¶ 13. The facts relevant to our review are not in dispute. On a motion to dismiss, we take the plaintiff's allegations in the complaint as true.

¶ 14. In 1998, the plaintiff was working as a carpenter for Ken Donais Construction, which, in turn, was doing subcontractor work for the Cleary Building Corporation. On July 9, 1998, while the plaintiff was building a pole barn, he fell approximately eighteen feet to the ground and sustained several serious injuries for which he received substantial medical treatment and which resulted in temporary and permanent physical disability. Because Ken Donais Construction did not have worker's compensation insurance, the plaintiff submitted a worker's compensation claim to the Uninsured Employers Fund on January 7, 2000.

¶ 15. After initially denying the plaintiff's claim for worker's compensation, Gallagher Services required

the plaintiff to submit to an independent medical examination. On March 13, 2000, the independent medical examination confirmed the plaintiff's temporary and permanent disability but found disability levels lower than those determined by the plaintiff's personal physician.[8] Nonetheless, the findings of the independent medical examination clearly entitled the plaintiff to worker's compensation benefits. Despite the plaintiff's repeated requests, as of September 2001, Gallagher Services had not distributed any worker's compensation benefits to the plaintiff.

¶ 16. The plaintiff sought a hearing before the Worker's Compensation Division regarding Gallagher Services' denial of worker's compensation benefits. On November 29, 2001, the administrative law judge found in the plaintiff's favor and ordered payment of benefits totaling approximately $100,000. Gallagher Services, however, authorized the Uninsured Employers Fund to pay only $4,000 and refused to pay the remainder of the award.

¶ 17. Gallagher Services vigorously sought review of the award. On May 31, 2002, the Labor and Industry Review Commission (LIRC) adopted the findings and order of the administrative law judge as its own. Gallagher Services then sought review in the Dane County Circuit Court, which on December 12, 2002 affirmed the LIRC decision. Gallagher Services then appealed to the court of appeals, which on September 25, 2003 upheld the LIRC decision. Only then did Gallagher Services finally pay the balance of the plaintiff's claim.

---

[8] Gallagher's own vocational expert conceded the plaintiff sustained up to a 10% loss of earning capacity due to his physical disabilities.

¶ 18. The plaintiff brought the present action in circuit court against the Uninsured Employers Fund and Gallagher Services, alleging that both the initial denial of benefits and the numerous reviews were pursued in bad faith. The plaintiff asserts that at no time did the Uninsured Employers Fund and Gallagher Services have a good faith basis for contesting his worker's compensation claim and that the appeals were taken merely to delay payment of rightfully owed benefits.

¶ 19. Gallagher Services and the Uninsured Employers Fund filed a motion to dismiss the complaint in the circuit court, contending that sovereign immunity precluded the claims against the Uninsured Employers Fund; that the plaintiff's claims were factually insufficient; and that the "exclusive remedies" provisions in the Worker's Compensation Act precluded the bad faith claims against both Gallagher Services and the Uninsured Employers Fund.

¶ 20. The circuit court granted the Uninsured Employers Fund's motion to dismiss the claim against it on sovereign immunity grounds. The plaintiff does not challenge the circuit court's dismissal of the claim against the Uninsured Employers Fund, and we do not address this issue.

¶ 21. The circuit court denied Gallagher Services' motion to dismiss the complaint against it, holding that the complaint alleged sufficient facts to support a bad faith claim. The circuit court concluded that Wis. Stat. §§ 102.81(1)(a) and 102.18(1)(bp) did not govern a remedy for the bad faith conduct of Gallagher Services, the administrator and agent of the Department, and did not bar the plaintiff from pursuing a bad faith tort claim against Gallagher Services.

101

¶ 22.   The court of appeals granted Gallagher Services' motion for leave to file an interlocutory appeal of the circuit court's denial of its motion to dismiss the complaint. The court of appeals reversed the order of the circuit court, ruling that Wis. Stat. § 102.18(1)(bp) provided the exclusive remedy for bad faith claims under the Worker's Compensation Act and that Wis. Stat. § 102.81(1)(a) and Wis. Admin. Code DWD § 80.62(7)(b) exempted Gallagher Services from any liability for bad faith claims.

## II

¶ 23.   In reviewing a circuit court's denial of a motion to dismiss a complaint for failure to state a cause of action, the court accepts the factual allegations of the complaint as true. The parties and the court assume for purposes of this review, as the circuit court found, that the complaint is factually sufficient to state a claim for the tort of bad faith. This court will affirm the court of appeals' dismissal of the plaintiff's complaint for a bad faith tort if, as a matter of law, the plaintiff's action is barred by the Worker's Compensation Act. The effect of the Act on the plaintiff's claim is a question of law that this court determines independently of the circuit court and the court of appeals but benefiting from their analyses.

¶ 24.   The court must interpret and apply both the Worker's Compensation Act, Wis. Stat. ch. 102, and an administrative regulation, Wis. Admin. Code § DWD 80.62(7)(b). The interpretation and application of a statute and an administrative regulation to undisputed facts are ordinarily questions of law that we determine

102

independently of the circuit court and court of appeals, benefiting from their analyses.[9]

¶ 25. Further, when interpreting administrative regulations, we use the same rules of interpretation as we apply to statutes.[10] Administrative regulations promulgated pursuant to a power delegated by the legislature "should be construed together with the statute to make, if possible, an effectual piece of legislation in harmony with common sense and sound reason."[11] With regard to an agency's interpretation of its own administrative regulations, "an administrative construction of the agency's own regulations is controlling in determining their meaning unless plainly erroneous or inconsistent with the regulations."[12] The court has also stated that "an administrative interpretation of its own rules by an administrative agency . . . should be accorded great weight by the courts 'unless it is plainly erroneous or inconsistent' with the regulations."[13]

## III

¶ 26. This case requires the court to determine whether the Worker's Compensation Act provides a remedy against Gallagher Services, the administrator

[9] *Winters v. Winters,* 2005 WI App 94, ¶ 7, 281 Wis. 2d 798, 699 N.W.2d 229; *Garcia v. Mazda Motor of Am., Inc.,* 2004 WI 93, ¶ 7, 273 Wis. 2d 612, 682 N.W.2d 365; *Moonlight v. Boyce,* 125 Wis. 2d 298, 303, 372 N.W.2d 479 (Ct. App. 1985).

[10] *State v. Busch,* 217 Wis. 2d 429, 441, 576 N.W.2d 904 (1998) (citations omitted).

[11] *Id.*

[12] *Law Enforcement Standards Bd. v. Village of Lyndon Station,* 101 Wis. 2d 472, 490, 305 N.W.2d 89 (1981).

[13] *State ex rel. Durando v. State Athletic Comm'n,* 272 Wis. 191, 195, 75 N.W.2d 451 (1956) (citations omitted).

of the Uninsured Employers Fund and agent of the Department, for its alleged bad faith conduct and whether the Act bars the plaintiff's tort claim against Gallagher Services for bad faith.[14]

¶ 27. To answer these questions, we must examine two provisions of the Worker's Compensation Act, Wis. Stat. §§ 102.81(1)(a) and 102.18(1)(bp), and Wis. Admin. Code § DWD 80.62(7)(b). These statutes and the regulation are interrelated. Wisconsin Stat. § 102.81(1)(a) and the regulation incorporate by reference the terms of § 102.18(1)(bp).

¶ 28. We begin by summarizing the positions of the parties and our interpretation of the statutes and regulation at issue. As expected, the parties disagree over the proper interpretation of these statutes and the impact of these statutes on the present case.

¶ 29. Gallagher Services contends that the Worker's Compensation Act provides an exclusive statutory remedy for an employee's claim of bad faith

---

[14] The Worker's Compensation Act represents the legislative compromise between the competing interests of employers, employees, and the general public, statutorily guaranteeing compensation to employees for their work-related injuries in exchange for their relinquishment of common-law tort remedies. The Worker's Compensation Act is ordinarily the "exclusive remedy" for certain statutorily defined injuries. *See La Crosse v. WERC,* 182 Wis. 2d 15, 29–30, 513 N.W.2d 579 (1994). *See also Guse v. A.O. Smith Corp.,* 260 Wis. 403, 406–07, 51 N.W.2d 24 (1952) ("In enacting the Act, the legislature intended to impose upon employers an absolute liability, regardless of fault; and in return for this burden, intended to grant employers immunity from all tort liability on account of injuries to employees."); *Vick v. Brown,* 255 Wis. 147, 153, 38 N.W.2d 716 (1949) ("[The employer's liability] is solely under the workmen's compensation law. There is no liability in tort.").

104

and disallows any recovery against Gallagher Services for both the statutory penalty for bad faith and damages in a tort claim.

¶ 30.    The nonparty brief of the Department joins Gallagher Services in this interpretation of the Act. It cites to no previous interpretation of the statutes or regulation at issue. We need not give deference to the Department's interpretation of the statutory provisions in its nonparty brief in the present case because although the legislature has charged the Department with administering the Act and the Department promulgated the regulation, the Department has no experience in determining whether the Act bars a claim in circuit court against its agent for the agent's bad faith conduct in administering an injured employee's claims against an uninsured employer. The regulation substantially incorporates the language of the statutory provisions, and the Department's interpretation of the regulation in its brief cannot be harmonized with the statutes. The Department's interpretation of its regulation in its nonparty brief is plainly erroneous and inconsistent with the statute, and therefore the Department's interpretation of its regulation in its brief does not control, nor will it be accorded great weight.

¶ 31.    The plaintiff disagrees, of course, with Gallagher Services' interpretation of the Act. According to the plaintiff, the statutory penalties imposed upon an employer who has acted in bad faith do not apply to Gallagher Services. The Act, according to the plaintiff, does not address Gallagher Services' liability for its acts of bad faith and therefore does not bar the plaintiff's bad faith tort claim against Gallagher Services.

¶ 32. We agree with Gallagher Services. Our interpretation of the statutes and regulation at issue is as follows: Reading Wis. Stat. § 102.81(1)(a) with the enumerated penalty and interest statutes and the regulation, we conclude that the Department must pay worker's compensation to an injured employee that an insured employer would have paid the injured employee but that neither the Department nor its agent has to pay an injured employee any of the penalties or interest that the listed statutes would have imposed on an insured employer or insurance carrier for their misconduct. The Worker's Compensation Act, however, does not address Gallagher Services' liability for its acts of bad faith and therefore does not bar the plaintiff's bad faith tort claim against Gallagher Services.

## IV

¶ 33. In reaching our interpretation, we first examine Wis. Stat. § 102.81(1)(a) and the second sentence of Wis. Admin. Code § DWD 80.62(7)(b).

¶ 34. Wisconsin Stat. § 102.81(1)(a) provides for the payment of worker's compensation claims to an employee when an employer is uninsured. The statute requires that the Department of Workforce Development[15] pay an injured employee the compensation owed by the uninsured employer under chapter 102. The Department need not, however, pay to the employee those penalties and interest due under §§ 102.16(3), 102.18(1)(b) and (bp), 102.22(1), 102.34(3), 102.57, and 102.60. Thus, to understand the extent of the Department's obligation to an injured employee of an

---

[15] Wis. Stat. § 102.01(2)(ap).

uninsured employer under § 102.81(1)(a), we must examine the excepted penalty and interest provisions listed therein.

¶ 35.   Wisconsin Stat. § 102.81(1)(a) reads in relevant part as follows:

> If an employee of an uninsured employer . . . suffers an injury for which the uninsured employers fund is liable under s. 102.03, the department or the department's reinsurer shall pay to or on behalf of the injured employee or to the employee's dependents an amount equal to the compensation owed them by the uninsured employer under this chapter except penalties and interest due under ss. 102.16(3), 102.18(1)(b) and (bp), 102.22(1), 102.35(3), 102.57, and 102.60.

¶ 36.   The second sentence of Wis. Admin. Code § DWD 80.62(7)(b) (the regulation adopted by the Department implementing Wis. Stat. § 102.81(1)(a)) is substantially the same as the "except" language of Wis. Stat. § 102.81(1)(a). The second sentence of § DWD 80.62(7)(b) incorporates by reference the same enumerated statutes as listed in Wis. Stat. § 102.81(1)(a). The regulation makes clear that neither the Department nor its agent, here Gallagher Services, is liable for the penalties and interest set forth in the statutory provisions listed in both the statute and regulation. The second sentence of the regulation states in relevant part:

> The department or its agent is not liable for penalties and interest due under ss. 102.16(3), 102.18 (1)(b) and (bp), 102.22(1), 102.35(3), 102.57 and 102.60, Stats.

¶ 37.   To understand what the Department or its agent need not pay from the Uninsured Employers Fund under Wis. Stat. § 102.81(1)(a) and the second

107

sentence of Wis. Admin Code § DWD 80.62(7)(b), we must examine the statutory penalty and interest provisions listed therein.

¶ 38.  We turn our attention first to Wis. Stat. § 102.18(1)(bp), which provides a penalty for bad faith conduct. Gallagher Services insists that Wis. Stat. § 102.81(1)(a) read with § 102.18(1)(bp) establishes an employee's exclusive remedy for a bad faith claim but exempts Gallagher Services from any penalty for its bad faith.

¶ 39.  Wisconsin Stat. § 102.18(1)(bp) authorizes the Department to include a penalty in an award to an employee for each event of malice or bad faith of an employer or insurance carrier in suspending, terminating, or failing to make payments or in failing to report an injury. By its plain language, § 102.18(1)(bp) does not bestow upon the Department the authority to assess a penalty against itself or its agent. Wisconsin Stat. § 102.18(1)(bp) characterizes the penalty as the exclusive remedy against an employer or insurance carrier for malice or bad faith.

¶ 40.  Wisconsin Stat. § 102.18(1)(bp) states in relevant part:

> The department may include a penalty in an award to an employee if it determines that the employer's or insurance carrier's suspension of, termination of or failure to make payments or failure to report injury resulted from malice or bad faith. This penalty is the exclusive remedy against an employer or insurance carrier for malice or bad faith. . . . The department may assess the penalty against the employer, the insurance carrier or both. Neither the employer nor the insurance carrier is liable to reimburse the other for the penalty amount. The department may, by rule, define actions which demonstrate malice or bad faith.

108

¶ 41. The text of Wis. Stat. § 102.18(1)(bp) explicitly deals solely with the malice and bad faith of an "employer or insurance carrier."[16]

¶ 42. First, the only situation in which the Department may award a penalty under Wis. Stat. § 102.18(1)(bp) is when the Department determines that the employer or insurance carrier has acted with malice or bad faith.

¶ 43. Second, Wis. Stat. § 102.18(1)(bp) announces that the penalty for malice or bad faith is "the exclusive remedy against an employer or insurance carrier for malice or bad faith." It does not announce that it is the exclusive remedy against the Department or its agent for malice or bad faith.

¶ 44. Third, Wis. Stat. § 102.18(1)(bp) states that "[t]he department may assess the penalty against the employer, the insurance carrier or both" and that "[n]either the employer nor the insurance carrier is liable to reimburse the other for the penalty amount." It makes no reference to assessing a penalty against the Department or its agent.

¶ 45. In sum, we conclude that Wis. Stat. § 102.18(1)(bp) does not govern the conduct of the Department or its agent and does not impose any penalty on the Department or its agent for bad faith conduct. This interpretation of § 102.18(1)(bp) is affirmed by Wis. Admin. Code DWD 80.70, the administrative regulation adopted by the Department (as authorized by § 102.18(1)(bp)) to define "malice" and "bad faith." The Department specifically defines "bad faith" and "malice" as these terms relate to the conduct of an employer, an insurance company, and a self-insured employer.

---

[16] Wis. Stat. § 102.18(1)(bp).

¶ 46. Our interpretation of Wis. Stat. § 102.18(1)(bp) is further affirmed by an analysis of the other penalty and interest provisions enumerated in Wis. Stat. § 102.81(1)(a) as penalties and interest that the Department and its agent need not pay. We conclude that none of these provisions governs the conduct of the Department or its agent.

¶ 47. At best, only three of the seven statutory provisions listed in Wis. Stat. § 102.81(1)(a) and Wis. Admin Code § DWD 80.62(7)(b) involve conduct that the Department or its agent might engage in while administering the Uninsured Employers Fund, but the texts of these provisions expressly limit their application to entities other than the Department or its agents. The other four provisions could never implicate the Department or its agent.

¶ 48. Three penalties limit their application to employers and their insurers. Wisconsin Stat. § 102.22(1) imposes penalties and interest on the employer or its insurer for delayed payment.[17] Wisconsin Stat. § 102.18(1)(b) imposes a penalty on an employer or its insurer for bad faith failure to pay compensation ordered by the Department in an interlocutory award. Wisconsin Stat. § 102.18(1)(bp), discussed above, imposes a penalty on an employer or its insurer for bad faith conduct or malice.

¶ 49. Although the plaintiff asserts that Gallagher Services engaged in conduct that may have

---

[17] Wisconsin Stat. § 102.22(1) states in relevant part: "If the employer or his or her insurer inexcusably delays in making the first payment that is due an injured employee for more than 30 days after the day on which the employee leaves work as a result of an injury and if the amount due is $500 or more, the payments as to which the delay is found shall be increased by 10%."

violated one or more of these provisions, these provisions by their very terms are limited in application to "employers" or "insurers." Gallagher Services is neither. The texts of the three statutes penalize an employer's or an insurer's conduct, not the conduct of the Department or its agent. These provisions cannot be extended to apply to the Department or its agent without rewriting the statutes.

¶ 50.  Moreover, the other four enumerated penalty and interest provisions address the conduct of an employer, not the Department or its agent. For example, Wis. Stat. § 102.16(3) bars, inter alia, an employer from recouping worker's compensation payments from the injured employee; the penalty for violation is stated in § 102.85. Wisconsin Stat. § 102.35(3) imposes liability to an employee for the employee's wages on an employer who without reasonable cause refuses to rehire an injured employee. Wisconsin Stat. § 102.57 imposes penalties on an employer for injuries caused by an employer's failure to comply with any statute, rule, or order of the department. Wisconsin Stat. § 102.60 increases a worker's compensation award to be paid by an employer who illegally employs a minor. None of these provisions applies to conduct within the Department's or its agent's sphere of activity. They all relate to an employer.

¶ 51.  If the legislature had intended to exempt the Department or its agent from liability for bad faith conduct, the legislature could have done so explicitly. Instead, the legislature specifically lists seven statutory provisions that increase a worker's compensation award to an injured employee because of an employer's or an insurer carrier's misconduct and then clearly provides that the Department is not required to pay these increased amounts to an injured employee of an uninsured employer.

111

¶ 52. Our interpretation of the statutes and regulation at issue is affirmed by what we view as the acid test for determining the meaning of Wis. Stat. § 102.81(1)(a)'s (and Wis. Admin Code § DWD 80.62(7)(b)'s) reference to § 102.18(1)(bp): Incorporate the text of § 102.18(1)(bp) into § 102.81(1)(a) in lieu of § 102.81(1)(a)'s mere statutory reference to § 102.18(1)(bp).

¶ 53. The combined texts of the two statutory provisions clearly demonstrate that the Department is exempt from paying an injured employee the penalty an employer or an insurance carrier incurs for bad faith conduct. The combined texts say nothing about the bad faith of the Department or its agent.

¶ 54. The combined texts of Wis. Stat. § 102.81(1)(a) and § 102.18(1)(bp) read as follows:

> If an employee of an uninsured employer . . . suffers an injury for which the uninsured employers fund is liable under s. 102.03, the department or the department's reinsurer shall pay to or on behalf of the injured employee or to the employee's dependents an amount equal to the compensation owed them by the uninsured employer under this chapter except penalties and interest due under . . . 102.18(1) . . . (bp), [which provides that] the department may include a penalty in an award to an employee if it determines that the employer's or insurance carrier's suspension of, termination of or failure to make payments or failure to report injury resulted from malice or bad faith. This penalty is the exclusive remedy against an employer or insurance carrier for malice or bad faith. . . . The department may assess the penalty against the employer, the insurance carrier or both. Neither the employer nor the insurance carrier is liable to reimburse the other for the penalty amount. The department may, by rule, define actions which demonstrate malice or bad faith.

112

¶ 55. Our interpretation of the statutes is also supported by the public policy rationale underlying the statutes and regulation excusing the Department and its agent from paying the penalties and interest imposed on an employer or insurance carrier by the statutory provisions listed in Wis. Stat. § 102.81(1)(a). Section 102.81(1)(a) is a compromise for the benefit of employees of uninsured employers. The employees receive worker's compensation benefits from the Uninsured Employers Fund but do not receive from the Uninsured Employers Fund the penalties and interest that are ordinarily assessed against an employer who has engaged in misconduct.

¶ 56. Furthermore, these enumerated penalty and interest provisions are designed to deter employers and insurers from misconduct. If the Department pays these penalties and interest from the Uninsured Employers Fund, little if any deterrent effect on employers is achieved. Moreover, any such payment of these penalties and interest from the Uninsured Employers Fund depletes the assets of the Uninsured Employers Fund available to injured employees.

¶ 57. Gallagher Services also argues, however, that the first sentence of Wis. Admin. Code § DWD 80.62(7)(b) makes clear that the Worker's Compensation Act protects it from liability for bad faith by treating the Department or its agent exactly like insurers. Gallagher Services reasons that an insurer is liable only for the exclusive statutory penalty for its bad faith, not for a bad faith tort, and that the first sentence of the regulation expressly grants Gallagher Services the rights of an insurer. Gallagher Services further reasons that having been granted the rights of an insurer it is not liable in a tort action for bad faith and that furthermore it is not liable for the exclusive statutory

113

penalty for its bad faith because it is expressly exempted by the statute and regulation from the statutory penalty. The nonparty brief of the Department does not join Gallagher Services in this interpretation of the first sentence of DWD § 80.62(7)(b).

¶ 58. To evaluate Gallagher Services' reasoning, we begin with the text of the first sentence of the administrative regulation, Wis. Admin. Code § DWD 80.62(7)(b). It states that "the department or its agent shall have the same rights and responsibilities *in administering claims* under ch. 102, Stats., as an insurer authorized to do business in this state."[18] This language, however, does not mean that Gallagher Services, as the administrator of claims against the Uninsured Employers Fund (and as an agent of the Department), is an "insurer" or that Gallagher Services will be treated as an "insurer" for all purposes. In other words, the regulation does not, and cannot, without a statutory basis, transform the Department or its agent into an "insurer" under chapter 102.

¶ 59. The limited meaning of this sentence of the regulation is made clear when examining the stated purpose of Wis. Admin. Code § DWD 80.62. The stated purpose of this regulation "is to clarify the department's procedures for handling claims for compensation to injured workers under s. 102.81(1), Stats."[19] The Department has authority under the Act to "adopt its own rules of procedure."[20]

¶ 60. Sections 102.80 through 102.87 governing the Uninsured Employers Fund do not set forth detailed procedures for how the Department or its agent

---

[18] Wis. Admin. Code § DWD 80.62(7)(b) (emphasis added).

[19] Wis. Admin. Code § DWD 80.62(1).

[20] Wisconsin Stat. § 102.15(1).

shall process, investigate, and pay claims to injured employees of uninsured employers. In contrast, other provisions of chapter 102 provide more explicit guidance to an insurance carrier for administering claims.

¶ 61. The first sentence of the regulation must therefore be read as merely acknowledging that the Department or its agent in administering claims against the Uninsured Employers Fund has the applicable administrative rights and responsibilities of insurers in this state who process, investigate, and pay claims under chapter 102.

¶ 62. Thus, for example, under Wis. Stat. § 102.123, the agent has an insurer's responsibility to provide to an employee a copy of the employee's statement. Under § 102.13(1)(a) and (am), the agent has an insurer's right to have an employee submit to reasonable medical and vocational examinations. Under § 102.13(1)(b), the agent has an insurer's responsibility to tender to an employee all necessary expenses for examinations.

¶ 63. The first sentence of § DWD 80.62(7)(b) establishes nothing more than rights and responsibilities of the Department or agent in administering claims. It does not, as Gallagher Services argues, grant substantive immunity to the agent for a bad faith tort claim. Any such immunity would be inconsistent with the texts of the statutes and the regulation.

¶ 64. Consistent with our discussion of Wis. Stat. §§ 102.81(1)(a) and 102.18(1)(bp) and the second sentence of Wis. Admin. Code § DWD 80.62(7)(b), we conclude that the first sentence of § DWD 80.62(7)(b) does not exempt Gallagher Services from liability for the tort of bad faith.

¶ 65. Not a single sentence in the Worker's Compensation Act refers to the bad faith conduct of the

115

Department or its agent. The sole bad faith statutory remedy in the Worker's Compensation Act is set forth in Wis. Stat. § 102.18(1)(bp), which by its very text applies to the bad faith of an employer or an employer's insurer. The text of Wis. Stat. § 102.18(1)(bp) explicitly deals solely with the malice and bad faith of an "employer or insurance carrier."[21]

¶ 66. The statutory penalty in § 102.18(1)(bp) constitutes the "exclusive remedy" for the bad faith conduct of an employer or an insurance carrier. Because Wis. Stat. § 102.18(1)(bp) does not apply to Gallagher Services, the Act does not provide an "exclusive remedy" for Gallagher Services' alleged bad faith misconduct. Moreover, § 102.81(1)(a) exempts the Department and its agent from paying an employee the statutory penalties and interest imposed on an employer or an insurance carrier for their misdeeds. Nothing in section 102.81(1)(a) exempts the Department or its agent from liability for its bad faith conduct in processing claims.

¶ 67. In sum, we hold that Wis. Stat. §§ 102.81(1)(a) and 102.18(1)(bp) of the Worker's Compensation Act and Wis. Admin. Code § DWD 80.62(7)(b) do not govern an injured employee's claim for the alleged bad faith conduct of Gallagher Services.

¶ 68. Having thus determined that the Worker's Compensation Act does not provide a remedy for the bad faith conduct of Gallagher Services, we must next examine whether the plaintiff's bad faith tort claim against Gallagher Services is otherwise recognized by or barred by the Act.

---

[21] Wisconsin Stat. § 102.18(1)(bp).

V

¶ 69. A review of the case law regarding bad faith claims against insurance companies and the "exclusive remedy" provision of the Worker's Compensation Act makes clear that the case law has recognized the tort of bad faith against a worker's compensation insurance carrier and that the Act's exclusivity provision does not bar the tort of bad faith.

¶ 70. The seminal cases on bad faith tort claims against insurance companies are *Anderson v. Continental Insurance Co.,* 85 Wis. 2d 675, 271 N.W.2d 368 (1978), and *Coleman v. American Universal Insurance Co.,* 86 Wis. 2d 615, 273 N.W.2d 220 (1979).

¶ 71. In *Anderson,* the court recognized a common law cause of action against an insurer for acting in bad faith when processing a claim. The *Anderson* court determined that the tort of bad faith is an intentional tort.[22]

¶ 72. A year later, in *Coleman,* a worker's compensation claimant alleged that the defendants, the worker's compensation insurer and its adjusting company, acted in bad faith in arbitrarily and capriciously denying him rightfully owed worker's compensation benefits, thereby injuring him by the bad faith denial and delay of worker's compensation payments.[23] In response, the defendants moved for summary judgment on the ground that the claimant's exclusive remedy was under the Worker's Compensation Act, and therefore, the courts had no jurisdiction to entertain this tort action.

---

[22] *Anderson v. Cont'l Ins. Co.,* 85 Wis. 2d 675, 691–92, 271 N.W.2d 368 (1978).

[23] *Coleman v. Am. Universal Ins. Co.,* 86 Wis. 2d 615, 619, 273 N.W.2d 220 (1979).

¶ 73. The *Coleman* court determined that the Worker's Compensation Act, as it existed before the enactment of Wis. Stat. § 102.18(1)(bp), failed to offer a remedy for the insurance company's misconduct. As the *Coleman* court explained, "if the injury is one covered by the Worker's Compensation Act, the compensation remedy is exclusive. If [the injury] is not so covered, the fact that a worker's compensation remedy exists for a separate injury is irrelevant."[24]

¶ 74. The *Coleman* court concluded that the bad faith "injury" alleged in *Coleman* was separate and distinct from the original job-related injury and thus was not addressed by the Worker's Compensation Act.[25] Accordingly, the *Coleman* court held that, under the circumstances of *Coleman,* "the separate tort of bad faith may be alleged and proved in the courts."[26] In other words, "where a worker's compensation insurer acts in bad faith in the settlement or payment of compensation benefits, a separate tort is committed that is not within the purview of the exclusivity provisions of the worker's compensation law . . . ."[27]

---

[24] *Coleman,* 86 Wis. 2d at 622.

[25] The *Coleman* court determined that the injury "had its genesis in conduct by the insurer that arose not out of the employment but out of the contractual obligation of the insurer to pay." *Coleman,* 86 Wis. 2d at 623. The court reasoned that "[t]he injury for which remedy is sought in the instant case is the emotional distress and other harm caused by the defendants' intentional acts during the investigation and during the course of payment of the claim. This claimed injury was distinct in time and place from the original on-the-job physical injury which was subject to the Compensation Act." *Id.*

[26] *Coleman,* 86 Wis. 2d at 620.

[27] *Id.*

118

¶ 75. The legislature was apparently unhappy with the *Coleman* decision and revised the statutes to respond to *Coleman*.[28] It created Wis. Stat. § 102.18(1)(bp) in 1981 that specifically and explicitly provided an "exclusive remedy" in the Worker's Compensation Act for bad faith claims against employers and their insurers.[29] This exclusive remedy statute makes no reference to the bad faith conduct of the Department or its agent, as we explained previously.

¶ 76. Gallagher Services contends that the existence of Wis. Stat. § 102.18(1)(bp) imposing a statutory penalty for the bad faith acts of an employer and an insurance carrier distinguishes this case from *Coleman*. We disagree with this contention.

¶ 77. Although the legislature adopted Wis. Stat. § 102.18(1)(bp) governing bad faith in worker's compensation cases, this statute is a limited one, providing a limited alternative exclusive remedy against an employer and its insurer on an employee's bad faith claim. The limited exclusive statutory remedy is a bad faith penalty awarded to an injured employee, in lieu of the employee's seeking an unlimited jury award in circuit court. The statute does not address any and all claims of bad faith alleged by an injured employee. It specifically addresses only injuries caused by the bad faith of employers and their insurance companies.

¶ 78. No Uninsured Employers Fund existed in 1981 and therefore the legislature could not have intended § 102.18(1)(bp) to apply to the Department

---

[28] *Kimberly-Clark Corp. v. LIRC,* 138 Wis. 2d 58, 62–63, 405 N.W.2d 684 (Ct. App. 1987); *Jadofsky v. Iowa Kemper Ins. Co.,* 120 Wis. 2d 494, 497–98, 355 N.W.2d 550 (Ct App. 1984).

[29] This court has recognized this exclusive remedy for bad faith claims in worker's compensation matters. *Brown v. LIRC,* 2003 WI 142, ¶ 23, 267 Wis. 2d 31, 671 N.W.2d 279.

and the Uninsured Employers Fund. The legislature did not amend § 102.18(1)(bp) when it created the Uninsured Employers Fund to address the bad faith of the Department or an agent of the Department in administering claims against the Uninsured Employers Fund. And why not? Probably because no one imagined that the bad faith of the Department or its agent in administering claims would be an issue. Why would the Department or its agent commit the intentional tort of bad faith when no profit or any other motive exists for such intentional wrongdoing?

¶ 79. There is no doubt that the legislature intended the Worker's Compensation Act to be the exclusive mechanism for handling injuries that fall within its ambit. Here, as we have explained, the plaintiff's bad faith claim against Gallagher Services falls outside the ambit of the Act. In the present case, as in *Coleman,* the Worker's Compensation Act[30] fails to offer the plaintiff any remedy at all for his claim of injury resulting from alleged bad faith conduct. The Act does not explicitly bar the plaintiff from seeking damages against Gallagher Services for the intentional tort of bad faith.[31]

¶ 80. We determine that the Act, the administrative code, and the *Coleman* case lead to the following unavoidable conclusions: The Act does not explicitly bar the plaintiff's bad faith claim against Gallagher Services for its alleged bad faith in processing the claim. The injury the plaintiff suffered resulting from Gallagher Services' alleged bad faith conduct occurred after the injury covered by the Act. Accordingly, the plaintiff's injury allegedly caused by Gallagher Services

[30] *See, e.g.,* Wis. Stat. §§ 102.81(1)(a), 102.18(1)(bp); Wis. Admin. Code § DWD 80.62(7)(b).

[31] *Id.*

was not an injury covered under the Act, and the plaintiff may seek relief in the courts for the tort of bad faith against Gallagher Services under the principles enunciated in *Coleman*. Although *Coleman* involved a worker's compensation insurer, the principles enunciated therein apply to Gallagher Services, absent explicit statutory language barring the assertion of the tort of bad faith.

¶ 81. Gallagher Services argues, however, that the law is clear under *Borque v. Wausau Hospital Center*, 145 Wis. 2d 589, 427 N.W.2d 433 (Ct. App. 1988), that when the legislature enacts an administrative scheme to enforce a statute, the administrative mechanism is presumed exclusive unless there is an affirmative legislative indication of the contrary. In *Borque*, the court of appeals stated: "[I]t is a fundamental principle of statutory construction that absent a legislative indication to the contrary, the legislature is deemed to have intended a comprehensive statutory remedy to be exclusive."[32]

¶ 82. Although the Worker's Compensation Act is a comprehensive statutory remedy for injuries of employees, some injuries of employees remain outside the Act. No comprehensive statutory scheme is set forth in the Act for dealing with an injured employee's bad faith tort claims against the Department or its agent. Nothing in the Act reveals that the legislature intended an injured employee's comprehensive worker's compensation remedy for injuries covered by the Act[33] to exclude an employee's tort recovery against the Department or its agent for the agent's bad faith conduct in adminis-

[32] *Borque v. Wausau Hosp. Center*, 145 Wis. 2d 589, 594, 427 N.W.2d 433 (Ct. App. 1988).

[33] Wis. Stat. § 102.03(2).

tering claims. Bad faith is a common law tort. If a statute is to eliminate the tort in derogation of the common law, it should explicitly so state.[34]

¶ 83. The Department asserts in its nonparty brief public policy reasons for not applying *Coleman* in the present case. It argues that it is in the public interest to preserve the Uninsured Employers Fund's assets to pay the worker's compensation claims of injured employees of uninsured employers. This public interest is jeopardized, it argues, by allowing the plaintiff to proceed in his tort claim for bad faith against Gallagher Services. Although neither the Department nor its agent is authorized to pay the plaintiff's tort claim from the Uninsured Employers Fund, according to the Department, if the administrator is exposed to damages on bad faith tort claims, the Uninsured Employers Fund will in the future face higher service fees by entities competing to become the administrator and greater difficulty in securing the services of an administrator.

¶ 84. As a related point, the Department contends that imposing bad faith tort liability on the administrator will not accomplish the public policy of tort law to deter the wrongdoer from engaging in further misconduct, because any damages the Department's agent

---

[34] *See Strenke v. Hogner,* 2005 WI 25, ¶ 29, 279 Wis. 2d 52, 694 N.W.2d 296 ("Statutes in derogation of the common law are to be strictly construed."); *Kranzush v. Badger State Mut. Cas. Co.,* 103 Wis. 2d 56, 74, 307 N.W.2d 256 (1981) ("Statutes are not to be construed as changing thecommon law unless the purpose to effect such change is clearly expressed therein.") (internal citations omitted). For commentary criticizing and limiting this rule of interpretation, see 3 Norman J. Singer, *Statutes and Statutory Construction* 61:4 at 247–50 (6th ed. 2001).

pays for its wrongdoing will eventually be passed on to the Uninsured Employers Fund.

¶ 85.   The Department's view of public policy is not the only view of public policy. It is also arguable that imposing tort liability on the Department's agent for bad faith supports public policy and the deterrent goal of tort law. It is contrary to the purposes of the Uninsured Employers Fund and the Worker's Compensation Act to hold that the Fund's administrator (an agent of the Department) has no duty to act in good faith to injured employees when administering claims. It is also contrary to public policy to deny an injured employee relief against the Department's agent for a separate and distinct injury allegedly caused by its intentional tort of bad faith.

¶ 86.   Ultimately the Department concludes, and we agree, that the policy considerations regarding a plaintiff's bad faith tort claims against the administrator of the Uninsured Employers Fund are for the legislature. We therefore rely on the texts of the statutes and the regulation to conclude that the plaintiff is not barred by the Act from pursuing a bad faith tort claim against Gallagher Services.

* * * *

¶ 87.   We conclude that the text of Wis. Stat. § 102.81(1)(a) and § 102.18(1)(bp) and Wis. Admin. Code § DWD 80.62.(7)(b) do not bar the plaintiff's bad faith tort claim against Gallagher Services. Properly read, these provisions apply as follows in the present case:

¶ 88.   The Department or its agent must pay an amount equal to the worker's compensation owed to an injured employee for an injury for which the uninsured employer is liable.

¶ 89.   The Department and its agent are not, however, liable to pay an injured employee of an uninsured

employer for the penalty statutorily imposed on the employer for bad faith conduct.

¶ 90.   These provisions at issue do not in any way govern the plaintiff's bad faith tort action against Gallagher Services. The Worker's Compensation Act does not provide any remedy to the plaintiff for his bad faith claim against Gallagher Services for its alleged bad faith conduct in processing a worker's compensation claim, let alone an exclusive remedy.

¶ 91.   The injury for which the plaintiff seeks relief in this tort action is the injury caused by Gallagher Services' bad faith handling of the injured employee's (the plaintiff's) worker's compensation claim against an uninsured employer. This injury is separate and distinct from the original injury for which the uninsured employer and the Department are liable under the Worker's Compensation Act.

¶ 92.   Our case law recognizes a bad faith tort claim against a worker's compensation insurer for an injury separate and distinct from the initial injury for which an employer is liable under the Act, even though the bad faith occurred during the processing of a worker's compensation claim. The same reasoning applies to allow the plaintiff to pursue a bad faith tort action against Gallagher Services.

¶ 93.   The decision of the court of appeals is reversed. We remand the cause to the circuit court to reinstate the complaint against Gallagher Services. The plaintiff can pursue its tort claim of bad faith against Gallagher Services in accordance with the order of the circuit court.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 94. JON P. WILCOX, J. (*dissenting*). In 1989 the legislature created the Uninsured Employer Fund

(UEF) and the framework within which the Department of Workforce Development (DWD) administers it.[1] 1989 Wis. Act 64. At the time, Wis. Stat. § 102.18(1)(bp) (1987–88) had been the law of the state for almost a decade. When creating the UEF the legislature chose not to amend § 102.18(1)(bp) to include DWD and its agents as parties that could be penalized for their bad faith. In the subsequent eight legislative sessions, the legislature has also chosen not to make such an amendment.

¶ 95.  Based on the legislature's policy choice, the Worker's Compensation Act (Act) does not provide a remedy for employees like Christopher Aslakson (Aslakson) alleging bad faith by an agent of DWD like Gallagher Bassett Services, Inc. (Gallagher Services). Faced with a lack of a remedy, the court concludes that the common-law tort of bad faith applies. Majority op., ¶ 86. That conclusion interferes with a policy decision made by, and properly left to, the legislature. Accordingly, I dissent.

I

¶ 96.  The interplay between court decisions and legislative action concerning bad faith and worker's compensation law is crucial to determining whether Aslakson is barred from maintaining a bad faith tort claim against Gallagher Services. It leads to the conclusion that the legislature rejected the court recognized

---

[1] When the legislature enacted 1989 Wisconsin Act 64, it directed the Department of Industry, Labor and Human Relations (DILHR) to administer the Uninsured Employer Fund. In 1996 the Department of Workforce Development (DWD) replaced DILHR. This dissent uses "DWD" to refer to the entity in existence at the time pertinent to the context within which it is used.

bad faith tort claim in the context of the Act. After derogating common law, and acting with full knowledge of existing law, the legislature made the policy choice not to amend § 102.18(1)(bp) to include DWD and its agents.

## A

¶ 97. On October 31, 1978, this court recognized the tort of bad faith. *Anderson v. Cont'l Ins. Co.*, 85 Wis. 2d 675, 271 N.W.2d 368 (1978). The court "conclude[d] that, upon the pleading of appropriate facts, an insured may assert a cause of action in tort against an insurer for the bad faith refusal to honor a claim of the insured." *Id.* at 680.

¶ 98. In the same term, and just over two months later, this court considered whether an injured employee could bring a claim arising out of alleged bad faith conduct of parties that refused to honor his worker's compensation claim. *Coleman v. Am. Universal Ins. Co.*, 86 Wis. 2d 615, 623, 273 N.W.2d 220 (1979). The court concluded that the employee could bring a bad faith claim because at the time the Act did not cover the alleged injury. *Id.* at 623. In reaching its conclusion, the court noted the following:

> [T]his action is based not on the original work-related injury but on a second and separate injury resulting from the intentional acts of the insurer and its agents while investigating and paying the claim. The Act does not cover the alleged injury, and the exclusivity provision does not bar the claim.

*Id.* Note the court's focus on whether the alleged injury had been addressed by the legislature. The court did not focus on whether the Act covered a particular class of defendants.

¶ 99. To determine that "[t]he Act did cover the alleged injury," the court considered the language of the Act in effect at the time of Coleman's injury. *Id.* at 622. The court quoted the exclusivity provision: " 'Where such conditions exist the right to the recovery of compensation pursuant to this chapter shall be the exclusive remedy against the employer and the workman's compensation insurance carrier.' " *Id.* (quoting Wis. Stat. § 102.03(2) (1973–74)). The court then listed the Wis. Stat. § 102.03(1) (1973–74) conditions that had to exist to make the worker's compensation remedy exclusive:

"(1) Liability under this chapter shall exist against an employer only where the following conditions concur:

(a) Where the employe sustains an injury.

(b) Where, at the time of the injury, both the employer and employe are subject to the provisions of this chapter.

(c) 1. Where, at the time of the injury, the employe is performing service growing out of and incidental to his employment. . . .

(d) Where the injury is not intentionally self-inflicted.

(e) Where the accident or disease causing injury arises out of his employment."

*Id.* Determining that the alleged bad faith injury did not meet the conditions, the court concluded that the exclusivity provision found in § 102.03(2) did not bar Coleman's bad faith claim. *Id.* at 623.

¶ 100. Beyond simply considering whether Coleman's alleged bad faith injury met the conditions of § 102.03(1), the court considered whether other provisions of Wis. Stat. ch. 102 (1973–74) barred Coleman's

127

claim. Specifically, it concluded that Wis. Stat. § 102.22 (1973–74), which imposed a penalty for late payments, did not bar Coleman's claim. *Id.* at 625. The court adopted the holding of other courts that "the statutory penalty for inexcusably late payment does not bar additional remedies for an intentional wrong going beyond the mere late payment." *Id.* at 626.

¶ 101. After a review of ch. 102, the court concluded that "[t]he plaintiff's claim for intentional wrongdoing is not covered." *Id.* At the time the court decided *Coleman,* ch. 102 lacked any mention of a claim of bad faith like Coleman's. In the absence of the legislature addressing the claim, the newly recognized tort of bad faith applied.

B

¶ 102. In 1981 the legislature responded to the court's *Coleman* decision by creating Wis. Stat. § 102.18(1)(bp) (1981–82). Majority op., ¶ 75. When enactments of the legislature conflict with the common law, like § 102.18(1)(bp) did with *Coleman,* statutes prevail. *In re Voluntary Assignment of Milwaukee Sheep & Wool Co. v. Alm,* 186 Wis. 320, 323, 202 N.W.2d 693 (1925)(stating "where the statute in any respect changes the rule or order existing under the common law, such provisions must prevail"); *City of Madison v. DWD,* 2002 WI App 199, ¶ 30, 257 Wis. 2d 348, 651 N.W.2d 292. However, for a statute to prevail, the change must be clearly expressed. *Wisconsin Bridge & Iron Co. v. Indus. Comm'n,* 233 Wis. 467, 474, 290 N.W.2d 199 (1940); *NBZ, Inc. v. Pilarski,* 185 Wis. 2d 827, 836, 520 N.W.2d 93 (Ct. App. 1994). When a statute lacks a clear expression, courts strictly construe it. *Brown v. Loewenbach,* 217 Wis. 379, 385, 258 N.W. 379 (1935); *NBZ,* 185 Wis. 2d at 836.

¶ 103. Wisconsin Stat. § 102.18(1)(bp) "specifically and explicitly provided an 'exclusive remedy' in the Worker's Compensation Act for bad faith claims against employers and their insurers," majority op., ¶ 75, in conflict with the court's recognition of the tort of bad faith in the context of the Act. Accordingly, it constitutes a derogation of common law. The statute supplanted the tort of bad faith in the context of worker's compensation law. Rather than injured employees having a common-law claim to litigate in the courts, the legislature granted DWD the power to penalize an employer or insurance carrier for malice or bad faith.

¶ 104. While the *Coleman* court of 1978 accurately stated that "[t]he Act does not cover the alleged injury," *Coleman,* 86 Wis. 2d at 623, the same could no longer be said after the legislature's creation of § 102.18(1)(bp). In creating § 102.18(1)(bp), the legislature spoke on how it desired for bad faith to be handled in the context of the Act. Absent further action by the legislature, the tort of bad faith no longer applied in worker's compensation law after the legislature enacted § 102.18(1)(bp).

¶ 105. Contrary to the majority's assertion, this case is not like *Coleman,* majority op., ¶ 79, due to the enactment of § 102.18(1)(bp). In *Coleman,* the court could state that "[t]he Act does not cover the alleged injury" of bad faith. *Coleman,* 86 Wis. 2d at 623. With the creation of § 102.l8(1)(bp), which covers an alleged injury of bad faith, the majority cannot rely on the same rationale used in *Coleman.*

C

¶ 106. Within ten years of creating Wis. Stat. § 102.18(1)(bp), the legislature created the Uninsured Employers Fund (UEF). 1989 Wis. Act 64, § 55. Courts

presume that the legislature acts with full knowledge of existing laws. *E.g. Peters v. Menard, Inc.,* 224 Wis. 2d 174, 187, 589 N.W.2d 395 (1999). Accordingly, it should be presumed that the legislature had a full understanding of worker's compensation law, including § 102.18(1)(bp), when it enacted Act 64.

¶ 107. Act 64 made over 45 changes to Wis. Stat. ch. 102. 1989 Wis. Act 64. One of the changes included 1989 Wis. Act 64, § 37, which amended Wis. Stat. § 102.18(1)(bw). .Before Act 64, § 102.18(1)(bw) (1987–88) read as follows:

> If an insurer or self-insured employer pays compensation to an employe in excess of its liability and another insurer is liable for all or part of the excess payment, the department may order the insurer or self-insured employer that is liable to reimburse the insurer or self-insured employer that made the excess payment.

Act 64 made the following changes to § 102.18(1)(bw):

> If an insurer o̶r̶, a self-insured employer or, if applicable, the uninsured employers fund pays compensation to an employe in excess of its liability and another insurer is liable for all or part of the excess payment, the department may order the insurer or self-insured employer that is liable to reimburse the insurer or self-insured employer that made the excess payment or, if applicable, the uninsured employers fund.

1989 Wis. Act 64, § 37. The legislature apparently made the policy choice to amend § 102.18(1)(bw) to address its creation of the UEF in 1989 Wis. Act 64, § 55.

¶ 108. One thing that the legislature did not do in enacting Act 64 was amend § 102.18(1)(bp). *See* 1989 Wis. Act 64. Even though the legislature was creating the UEF, which would put DWD and its agents in a position to process worker's compensation claims, it did

not include DWD and its agents as parties that could be penalized for acting in bad faith under § 102.18(1)(bp). Based on the amendment to § 102.18(1)(bw), the subsection immediately below § 102.18(1)(bp) in the statutes, the legislature seemingly appreciated that the creation of the UEF would have an impact on various parts of ch. 102. Yet, the legislature chose not to amend § 102.18(1)(bp) when it created the UEF. It also chose not to amend § 102.18(1)(bp) in the eight legislative sessions since it created the UEF.

¶ 109. The legislature is the branch of government suited for making such policy decisions. " 'Public policy on a given subject is determined either by the constitution itself or by statutes passed within constitutional limitations. . . . When acting within constitutional limitations, the legislature settles and declares the public policy of a state, and not the court.' " *Progressive N. Ins. Co. v. Romanshek*, 2005 WI 67, ¶ 60, 281 Wis. 2d 300, 697 N.W.2d 417 (quoting *Borgnis v. Falk Co.*, 147 Wis. 327, 351, 133 N.W. 209 (1911)). "[W]hen the legislature has acted, 'the judiciary is limited to applying the policy the legislature has chosen to enact, and may not impose its own policy choices.' " *Id.* (quoting *Fandrey v. Am. Family Mut. Ins. Co.*, 2004 WI 62, ¶ 16, 272 Wis. 2d 46, 680 N.W.2d 345).

¶ 110. Based on the legislature's derogation of common law when it created § 102.18(1)(bp), injured employees alleging bad faith are barred from maintaining a common law bad faith claim. Based on the legislature's decision not to amend § 102.18(1)(bp) to include DWD and its agents for nine consecutive sessions, DWD and its agents are not subject to a bad faith penalty. Following the well-established rules about the derogation of common law and the presumption that the legislature acts with full knowledge of the law, one

would conclude that until the legislature acts to indicate otherwise, injured employees alleging bad faith against DWD or its agents are left without a remedy.

## II

¶ 111.  After the legislature rebuffed this court's conclusion that the tort of bad faith should apply in the context of worker's compensation law, it sent a message about its policy choice. When the legislature decided not to include DWD and its agents as parties subject to § 102.18(1)(bp) penalties for nine consecutive sessions, it sent a message about its policy choice. In spite of this message, the court has made it own policy decision.

¶ 112.  For the forgoing reasons, I respectfully dissent.