COURT OF APPEALS
DECISION
DATED AND FILED

April 9, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP420**

STATE OF WISCONSIN

Cir. Ct. Nos. **2017CV73
2018CV127**

IN COURT OF APPEALS
DISTRICT III

---

FRANCIS G. GRAEF,

   PLAINTIFF-APPELLANT,

V.

APPLIED UNDERWRITERS, INC.,

   DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Marinette County: JANE M. SEQUIN, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

¶1    STARK, P.J.  Francis G. Graef appeals from an order granting Applied Underwriters, Inc.'s motion to dismiss Graef's personal injury lawsuit. Applied Underwriters had contracted with Graef's worker's compensation insurance carrier, Continental Indemnity Company, to adjust its worker's

compensation claims. Graef sued Continental, and later Applied Underwriters, seeking damages for injuries he claimed were caused by Applied Underwriters' denial of medication under the Wisconsin Worker's Compensation Act (the Act).

¶2 This case previously came before this court and our supreme court on the question of whether the exclusive remedy provision in WIS. STAT. § 102.03(2) (2021-22)[1] of the Act barred Graef's tort action against Continental. Our supreme court determined "that the Act provides Graef's exclusive remedy for the injuries alleged in his complaint," and, accordingly, Continental was dismissed from this suit. *See Graef v. Continental Indem. Co.*, 2021 WI 45, ¶3, 397 Wis. 2d 75, 959 N.W.2d 628.

¶3 This appeal presents the same question as to Applied Underwriters, and we reach the same conclusion. Our conclusion that the Act's exclusive remedy provision bars this tort action against Applied Underwriters is based on this court's previous decision in *Walstrom v. Gallagher Bassett Services, Inc.*, 2000 WI App 247, ¶13, 239 Wis. 2d 473, 620 N.W.2d 223, which held that WIS. STAT. § 102.03(2) also applies to agents and representatives of a worker's compensation insurance carrier. Given *Walstrom*'s holding, Applied Underwriters stands in the same shoes as Continental for the purpose of the exclusive remedy provision. Therefore, our supreme court's conclusion—that Continental is immune from liability in tort—applies to Applied Underwriters as well. Accordingly, we affirm the circuit court's decision.

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted. Although the statutes at issue here have been amended since this case was originally filed in 2017, the parties do not argue that any of the amendments are relevant to the issues on appeal, and we independently see no relevance as well.

## BACKGROUND

¶4     The operative facts underlying this appeal were outlined previously by our supreme court. *Graef*, 397 Wis. 2d 75, ¶¶4-6. In summary, after a workplace accident in 2012—for which Graef received worker's compensation benefits—he continued to suffer from both physical injuries as well as depression. Graef alleged that Continental's—and later Applied Underwriters'—refusal to cover the cost of his depression medication in June 2015, a cost he was unable to shoulder on his own, resulted in worsening depression and caused him to suffer a self-inflicted, nonfatal gunshot wound to the head on August 9, 2015. These facts, which were presented in Graef's amended complaint, are accepted as true for purposes of this appeal. *See Cohn ex rel. Shindell v. Apogee, Inc.*, 225 Wis. 2d 815, 817, 593 N.W.2d 921 (Ct. App. 1999).

¶5     Graef filed suit against Continental alleging that it was "'negligent in failing to continue to authorize and pay for' the June 2015" depression medication refill. *Graef*, 397 Wis. 2d 75, ¶6. Thereafter, Continental moved for summary judgment, claiming that Graef brought his claim in the wrong forum because the Act provided his exclusive remedy. The circuit court[2] denied Continental's motion, but we reversed—on the basis that Graef's right to recovery existed under the Act and was the exclusive remedy—and directed the court to grant summary judgment in favor of Continental. *Graef v. Continental Indem. Co.*, No. 2018AP1782, unpublished slip op. ¶¶2, 39 (WI App Feb. 4, 2020).[3] Our

---

[2] The Honorable James Morrison entered the order denying Continental's motion for summary judgment.

[3] An unpublished opinion that is authored by a member of a three-judge panel and issued on or after July 1, 2009, may be cited for its persuasive value. WIS. STAT. RULE 809.23(3)(b). We cite to this unpublished case for background information and for the law of the case.

supreme court affirmed. *Graef*, 397 Wis. 2d 75, ¶3. On remand, the circuit court dismissed Graef's complaint against Continental.

¶6      During this time, however, Graef also filed a separate lawsuit against Applied Underwriters in Marinette County case No. 2018CV127. That lawsuit was subsequently consolidated with the suit against Continental in Marinette County case No. 2017CV73. Graef also moved for leave to file an amended complaint to add the allegations against Applied Underwriters to its complaint against Continental, asserting that Applied Underwriters "was associated with Continental Indemnity, and asked to assist in processing the claims of [Graef] regarding his worker's compensation carrier." The circuit court granted Graef's motion, and Applied Underwriters thereafter moved to dismiss the amended complaint.[4]

¶7      On remand from our supreme court, and after a nonevidentiary hearing, the circuit court granted Applied Underwriters' motion to dismiss Graef's amended complaint.[5] Relying on this court's decision in *Walstrom*, the circuit

---

[4] The circuit court did not address Applied Underwriters' motion to dismiss before it denied Continental's motion for summary judgment. Nevertheless, Continental *and* Applied Underwriters petitioned this court for leave to appeal a nonfinal order, which we granted. *See* WIS. STAT. RULE 809.50(3). In our decision, however, we refused to rule on whether Applied Underwriters "is entitled to the same protections against tort liability afforded by the exclusive remedy provision as Continental" because "the precise role Applied Underwriters played in the events at issue [was] unclear" and the circuit court had not "taken any action" on Applied Underwriters' motion to dismiss, meaning we lacked "jurisdiction to address its arguments." *Graef v. Continental Indem. Co.*, No. 2018AP1782, unpublished slip op. ¶¶36-38 (WI App Feb. 4, 2020). Graef then filed a petition for review with our supreme court, but Applied Underwriters did not seek review of our decision. Therefore, our supreme court did not address the issue as to Applied Underwriters. *See Graef v. Continental Indem. Co.*, 2021 WI 45, ¶7 n.6, 397 Wis. 2d 75, 959 N.W.2d 628.

[5] The Honorable Jane M. Sequin entered the order granting Applied Underwriters' motion to dismiss after Applied Underwriters moved for substitution of Judge Morrison.

4

court concluded that WIS. STAT. § 102.03(2)'s immunity applies "to employers and worker's compensation insurers and their respective agents and representatives." According to the court, pursuant to a "Management Services Agreement" (hereinafter, management agreement), "Applied [Underwriters] owed a contractual duty to Continental to handle claims" and "was acting on Continental's behalf as its agent and representative."[6] Therefore, the court concluded that the facts alleged in the amended complaint did not support a claim upon which relief could be granted, and Graef's "allegations, if proven, would satisfy the conditions for worker's compensation liability." Graef appeals.

## DISCUSSION

¶8 In *Graef*, our supreme court outlined the law under the Act applicable to this case. To summarize, WIS. STAT. § 102.03 "sets forth the basic

---

[6] As Graef does not appear to dispute that Applied Underwriters was acting as an agent or representative of Continental, we will not delve into the specific details of the management agreement, except to note that the agreement was signed in August 2015 and stated that Applied Underwriters would "provide the necessary and appropriate investigation, adjustment, defense and payment of claims arising from any [Continental] policy of insurance."

We also note that the circuit court considered the management agreement, which was not attached to Graef's amended complaint, in its decision on the motion to dismiss. While it was not attached to the complaint, the management agreement was included with an affidavit *submitted by Graef* in response to Applied Underwriters' motion to dismiss. There is no evidence in the record demonstrating that the court converted Applied Underwriters' motion to dismiss into one for summary judgment. *See Alliance Laundry Sys. LLC v. Stroh Die Casting Co.*, 2008 WI App 180, ¶14, 315 Wis. 2d 143, 763 N.W.2d 167 ("When the defendant attaches affidavits or other matters outside the pleadings to its motion to dismiss and the court, in its discretion, considers these outside matters, the court must convert the defendant's motion into one for summary judgment."). However, neither of the parties appear to question the court's reliance on the management agreement on appeal. Therefore, in accordance with the incorporation-by-reference doctrine, we will not address the issue further. *See Soderlund v. Zibolski*, 2016 WI App 6, ¶37, 366 Wis. 2d 579, 874 N.W.2d 561 (2015) (stating that a court may consider a document attached to a motion to dismiss without converting the motion if the document was referenced in the plaintiff's complaint, is central to his or her claim, and its authenticity has not been disputed).

requirements for a compensable injury under the Act" and "provides a list of conditions that impose liability under the Act against an 'employer, any other employee of the same employer and the worker's compensation insurance carrier.'" *Graef*, 397 Wis. 2d 75, ¶11 (quoting § 102.03(1)-(2)). Further, "employers and worker's compensation insurance carriers have a duty to pay for a subsequent injury that naturally flows from a covered workplace injury, including any injury caused or worsened by the treatment, or lack of treatment, of the original work-related injury." *Graef*, 397 Wis. 2d 75, ¶12; *see also **Jenkins v. Sabourin***, 104 Wis. 2d 309, 316, 311 N.W.2d 600 (1981).

¶9 Pursuant to WIS. STAT. § 102.03(2), when the conditions of liability are present, the Act provides the exclusive remedy: "Where such conditions exist the right to the recovery of compensation under this chapter shall be the exclusive remedy against the employer, any other employee of the same employer and the worker's compensation insurance carrier." As our supreme court explained, "[w]orker's compensation laws are considered 'the grand bargain'" drafted by the legislature to "balance[] competing societal interests," where "[i]n exchange for receiving immunity from tort liability, employers must provide benefits regardless of fault." *Graef*, 397 Wis. 2d 75, ¶10 (citation omitted); *see also **Mulder v. Acme-Cleveland Corp.***, 95 Wis. 2d 173, 180-81, 290 N.W.2d 276 (1980). *Graef* reiterated that the exclusive remedy provision is "an integral feature of the compromise between the interest of the employer and the interest of the worker." *Graef*, 397 Wis. 2d 75, ¶13 (citation omitted).

¶10 In *Graef*, our supreme court determined that the conditions of liability pursuant to WIS. STAT. § 102.03(1) had been met and that the Act provided Graef's exclusive remedy against Continental because "Graef's complaint establishe[d] an unbroken causal chain from his workplace injury to his

suicide attempt." *Graef*, 397 Wis. 2d 75, ¶¶14-21. In this appeal, we are likewise presented with a question as to the scope of the exclusive remedy provision under § 102.03(2), but the issue now before us is whether *Graef*'s holding is also applicable to Applied Underwriters. For the reasons that follow, we conclude that the Act also prohibits this action against Applied Underwriters.

¶11 This case comes before us on Applied Underwriters' motion to dismiss. A motion to dismiss tests the legal sufficiency of the complaint, and we review de novo whether the complaint states a claim on which relief can be granted. *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶¶17, 19, 356 Wis. 2d 665, 849 N.W.2d 693. For the purpose of our review, "[a]ll facts pleaded and all reasonable inferences from those facts are admitted as true." *Scott v. Savers Prop. & Cas. Ins. Co.*, 2003 WI 60, ¶5, 262 Wis. 2d 127, 663 N.W.2d 715. "The pleadings are to be liberally construed and a claim will only be dismissed if the plaintiff cannot recover under any circumstances." *Heinritz v. Lawrence Univ.*, 194 Wis. 2d 606, 610-11, 535 N.W.2d 81 (Ct. App. 1995). The question before us on appeal is whether the Act's exclusive remedy provision prohibits Graef from filing this tort action against Applied Underwriters in the circuit court, which is a question of law that we review independently. *See Ehr v. West Bend Mut. Ins. Co.*, 2018 WI App 14, ¶7, 380 Wis. 2d 138, 908 N.W.2d 486.

## I. WIS. STAT. § 102.03(2)

¶12 Graef's main argument is that WIS. STAT. § 102.03(2) "fails to immunize Applied Underwriters [from this tort action] for the simple reason that Applied Underwriters is neither Graef's employer, his employer's worker's compensation insurance carrier, nor a co-employee"—in other words, it is not one of the entities specifically listed in the statute. He claims that in interpreting the

7

statute, we are "not free to supplement clear statutes or add terms the [l]egislature never incorporated"; therefore, "[n]othing in § 102.03(2) immunizes Applied Underwriters from this suit."

¶13 We disagree with Graef's contention that the text of WIS. STAT. § 102.03(2) forecloses tort-liability immunity for Applied Underwriters because this court has previously concluded that § 102.03(2) extends immunity to agents and representatives of the listed entities. *See* ***Progressive N. Ins. Co. v. Romanshek***, 2005 WI 67, ¶52, 281 Wis. 2d 300, 697 N.W.2d 417 ("This court has long been committed to the principle that a construction given to a statute by the court becomes a part thereof, unless the legislature subsequently amends the statute to effect a change." (citation omitted)). In ***Walstrom***, Robert Walstrom suffered a workplace injury, and his employer's worker's compensation insurer, American Zurich Insurance Co., had contracted with an adjuster, Gallagher Basset Services, Inc., to administer claims under the worker's compensation policy. ***Walstrom***, 239 Wis. 2d 473, ¶¶2-3. Walstrom eventually brought a separate tort action against Gallagher, claiming that its delay in authorizing neck surgery resulted in permanent nerve damage. ***Id.***, ¶4. We affirmed the circuit court's summary judgment dismissal of the suit on the basis that the exclusive remedy provision applies to agents and representatives of worker's compensation carriers. ***Id.***, ¶13.

¶14 In reaching that conclusion, we relied on ***Wasley v. Kosmatka***, 50 Wis. 2d 738, 184 N.W.2d 821 (1971). In that case, the plaintiff had recovered worker's compensation benefits for her deceased husband's injuries as a result of a workplace accident that caused his death, but she also filed an independent tort action against a corporate officer who had been involved in the accident because "at the time of the accident he was acting in the capacity of a co[-]employee, not

in his capacity as president of the corporate employer." *Id.* at 740-41.  At the trial on liability, the circuit court denied the plaintiff's request to provide the safe place jury instruction, ruling that the instruction was not applicable because "the 'safe[]place' duty was the duty of the employer, not [the] defendant personally." *Id.* at 741.

¶15     Our supreme court affirmed, concluding that an injured worker could not maintain a tort action against an employer's corporate officer.  *Id.* at 742.  It explained that when considering the safe place statute and the Act together, allowing an injured worker to maintain a tort action against a corporate officer of an employer while also recovering worker's compensation benefits "would work a clear circumvention of the exclusive remedy provision of the Workmen's Compensation Law." *Id.* at 742, 746.

¶16     We then applied *Wasley*'s reasoning to the facts in *Walstrom*.  We stated that if "a worker could not maintain a tort action against a corporate officer of an employer" because "an injured worker recovering worker's compensation benefits directly from an employer, while at the same time recovering in tort indirectly against the same employer" "would be a clear circumvention of the exclusive remedy provision," then that reasoning must necessarily apply to worker's compensation carriers as well.  *Walstrom*, 239 Wis. 2d 473, ¶¶9, 13 (citing *Wasley*, 50 Wis. 2d at 746).  We stated explicitly that "[i]f the exclusive remedy doctrine applies to agents and representatives of the employer, then to be consistent it must also apply to agents and representatives of the worker's compensation carrier." *Id.*, ¶13.  Thus, since it was undisputed that Gallagher was an agent of American Zurich, Gallagher was also immune under the exclusive remedy provision. *Id.*, ¶¶1, 11.

¶17     **Walstrom** is on point and represents binding precedent on the issue of law presented in this appeal. *See* ***Cook v. Cook***, 208 Wis. 2d 166, 185-90, 560 N.W.2d 246 (1997) (the court of appeals is bound by published decisions of the court of appeals). Here, based on the allegations in the complaint and the management agreement, Applied Underwriters was acting in the same capacity as Gallagher in **Walstrom**—as an agent of the worker's compensation insurer contracted "to administer claims under the worker's compensation policy." *See* **Walstrom**, 239 Wis. 2d 473, ¶3. Thus, pursuant to **Walstrom**, Applied Underwriters is covered by the exclusive remedy provision of WIS. STAT. § 102.03(2) as an agent of Continental. Accordingly, our supreme court's holding in ***Graef*** is the law of the case as to Applied Underwriters as well, and Applied Underwriters is therefore entitled to dismissal of this suit.

¶18     We are not persuaded by Graef's arguments that this court's decision in **Walstrom** is inapplicable. First, Graef argues that **Walstrom** was wrongly decided and that its "rationale is fundamentally—and factually—flawed." According to Graef, "**Walstrom**'s very foundation—its presupposition that the worker's compensation insurer will pay twice, once in worker's compensation and again for the added injury in tort—is simply wrong: it receives reimbursement from the tortfeasor for damages caused." He further claims that WIS. STAT. § 102.29(1) "goes unaddressed and undiscussed in **Walstrom**, and this [c]ourt is not bound by precedent it issues when arguments never presented there compel a different conclusion when raised here."[7] *See* ***Wieting Funeral Home of Chilton,***

---

[7] As to Graef's arguments regarding WIS. STAT. § 102.29(1), as we discuss below, we do not read § 102.29(1) in the same manner that Graef presents, *see infra* ¶¶23-26, and, therefore, we are not persuaded that **Walstrom** is inapplicable to this case based on that statute.

*Inc. v. Meridian Mut. Ins. Co.*, 2004 WI App 218, ¶14, 277 Wis. 2d 274, 690 N.W.2d 442.

¶19 Given our supreme court's holding in *Cook*, Graef's argument that *Walstrom* was wrongly decided is best presented at a different time before a different court. *See Cook*, 208 Wis. 2d at 189-90 ("[O]nly the supreme court … has the power to overrule, modify or withdraw language from a published opinion of the court of appeals."). Regardless, we are not persuaded that *Walstrom* was wrongly decided.

¶20 The grand bargain established by the Act is not disturbed by extending immunity to agents and representatives of employers and worker's compensation insurers because the employer or the insurer remains liable. In other words, Graef has a claim under the Act for the alleged denial of his medication, which our supreme court affirmed in *Graef*. As Applied Underwriters argued, "Graef is fully compensated under worker's compensation whether that claim is paid by Continental or its agent. Graef did not sustain any additional damages based on the fact that his claim was allegedly denied by Continental's agent and not Continental itself." We agree with Applied Underwriters that a contrary decision in either *Walstrom* or *Wasley* would have undermined the grand bargain by creating a loophole that would allow worker's compensation claims

against the insurer but then also allow tort recovery against agents of the insurer involved in handling worker's compensation claims.[8]

¶21 Second, to the extent that Graef asserts that *Walstrom*'s holding does not apply based on factual differences between these cases—i.e. *Walstrom* involved "delayed surgery and exacerbated an original, ongoing neck injury, [while] Graef experienced new injuries to his face and head, parts of his body never injured before"—we disagree. Any factual differences between the respective employees' injuries would have no impact on our interpretation of the exclusive remedy provision in WIS. STAT. § 102.03(2), which requires only that

---

[8] Graef also challenges the applicability of *Wasley v. Kosmatka*, 50 Wis. 2d 738, 184 N.W.2d 821 (1971), on several bases. First, he claims that *Wasley* is inapplicable because the court did not interpret either WIS. STAT. §§ 102.03(2) or 102.29. However, the *Wasley* decision very clearly referenced both statutes, and the court further acknowledged that "the workmen's compensation statute contemplates that an employee can bring [a] third-party-negligence action," but the court noted that the question on appeal was "whether in suing a corporate officer in his capacity as a co[-]employee, the plaintiff can impose on [a] defendant the increased standard of care that the safe[]place law imposes on an 'employer.'" *See Wasley*, 50 Wis. 2d at 742 & nn.2-3. Thus, the question on appeal did not require the court to interpret §§ 102.03(2) or 102.29.

Second, Graef notes that "*Wasley* then dealt with immunity for corporate officers in their capacity as co-employees, something WIS. STAT. § 102.03(2) expressly confers." As Applied Underwriters aptly observes, however, "when *Wasley* was decided in 1971, there was no statutory immunity for co-employees. This was not added until 1977." *See Jenkins v. Sabourin*, 104 Wis. 2d 309, 311 n.2, 311 N.W.2d 600 (1981). This difference in the statute is why, when *Wasley* was decided, corporate officers were immune under § 102.03(2) when acting as representatives of the employer but not immune when acting as a co-employee, and it is why *Wasley* recognized that the president could be sued in tort as a "third party" under § 102.29. *See Wasley*, 50 Wis. 2d at 742 & nn.2-3.

Finally, Graef argues that "neither Continental nor Graef's employer compensate Applied [Underwriters] for tort liability directly or indirectly[,] and [therefore] *Wasley* adds nothing to this case." Graef's argument is not persuasive. *Walstrom v. Gallagher Bassett Services, Inc.*, 2000 WI App 247, 239 Wis. 2d 473, 620 N.W.2d 223, cited *Wasley* for the proposition that our "case law has interpreted WIS. STAT. § 102.03 as being the exclusive remedy against not only employers, but agents of employers as well." *Walstrom*, 239 Wis. 2d 473, ¶9. We then stated that the same rules "should be applied to worker's compensation carriers [as] to employers." *Id.*, ¶¶12-13. Thus, Graef's argument appears to challenge this court's reliance on *Wasley* in *Walstrom*. Again, this is an argument for a different court.

the "conditions" in § 102.03(1) "exist." As noted, our supreme court already determined in *Graef* that "Graef's tort action consists of allegations that, if proven, would satisfy the conditions for worker's compensation liability." *Graef*, 397 Wis. 2d 75, ¶¶19, 21. Accordingly, any factual differences between *Walstrom* and this case are inconsequential.

¶22 Finally, Graef argues that the holding in *Walstrom* does not apply here because Applied Underwriters was not an "adjusting firm" like Gallagher was in *Walstrom*. Instead, Graef claims that Applied Underwriters was acting as an "insurer" because "doing an insurance business" under WIS. STAT. § 618.02(2) includes "investigating and adjusting claims or assisting others in doing so." We disagree. Applied Underwriters and Gallagher were serving in the exact same role for their respective worker's compensation insurers: determining whether to authorize payment of worker's compensation benefits. Regardless of what title Graef attempts to place on Applied Underwriters, the holding in *Walstrom* was based not on Gallagher's title, but on whether it was acting as a representative or agent of an immune insurer.

## II. WIS. STAT. § 102.29(1)

¶23 Graef next argues that WIS. STAT. § 102.29(1) "confirms that the [l]egislature authorized this suit and never intended to immunize Applied Underwriters." Section 102.29(1)(a) provides, in pertinent part:

> The making of a claim for compensation against an employer or compensation insurer for the injury or death of an employee shall not affect the right of the employee, the employee's personal representative, or other person entitled to bring action to make claim or maintain *an action in tort against any other party* for such injury or death, hereinafter referred to as a 3rd party ….

(Emphasis added.) Graef claims that "tort claims exist against every other party besides the employer, its employees, and its worker's compensation insurer," and therefore Applied Underwriters is a "3rd party" under the statute's terms. In other words, according to Graef, § 102.29 "informs what [WIS. STAT.] § 102.03(2) means": "Since § 102.03(2) never mentions agents, 'any other party' includes them."

¶24    We disagree with Graef's reading of WIS. STAT. § 102.29. First, nothing in § 102.29 explicitly states that agents or representatives of worker's compensation insurers are a "3rd party" or "any other party." Second, Graef cites no legal authority, beyond some general statutory interpretation principles, for the proposition that because WIS. STAT. § 102.03(2) does not explicitly include agents or representatives, § 102.29(1) *must* include them.

¶25    Next, Graef cites *Candler v. Hardware Dealers Mutual Insurance Co.*, 57 Wis. 2d 85, 91, 203 N.W.2d 659 (1973), for the proposition that "'any other parties' are those against whom 'no liability could be entailed under the Act.'" He asserts that Applied Underwriters "modifies the term 'any other party' in WIS. STAT. § 102.29 to read 'any other party except those dispensing medication for the worker's compensation insurer.'" According to Graef, "[n]othing in [WIS. STAT. ch.] 102 or elsewhere justifies such a radical statutory revision." We disagree.

¶26    Graef's argument is based on the faulty premise that WIS. STAT. § 102.03(2) does not include agents or representatives of the listed entities. As noted above, both this court and our supreme court have interpreted § 102.03(2) as extending immunity beyond the specific entities listed to include their agents and representatives. *See Walstrom*, 239 Wis. 2d 473, ¶13; *Wasley*, 50 Wis. 2d at 746.

14

Without belaboring the point, because *Graef* determined that "Graef's tort action consists of allegations that, if proven, would satisfy the conditions for worker's compensation liability," *Graef*, 397 Wis. 2d 75, ¶21, there could be liability under the Act against Continental *and* Applied Underwriters. WISCONSIN STAT. § 102.29 simply preserves causes of action that are not barred under § 102.03(2). Here, immunity under § 102.03(2) applies; therefore § 102.29 does not advance Graef's argument.

### III. *Aslakson*

¶27 Graef next argues that *Walstrom* and *Wasley* were implicitly overruled by our supreme court's decision in *Aslakson v. Gallagher Bassett Services, Inc.*, 2007 WI 39, 300 Wis. 2d 92, 729 N.W.2d 712. In *Aslakson*, the court allowed a bad faith tort claim against Gallagher, which had been retained by the Department of Workforce Development (DWD) as the third-party administrator of the Uninsured Employers Fund (hereinafter, the Fund)—meaning that Gallagher was an agent of the DWD. *Id.*, ¶¶3-4, 6-7, 10; *see also* WIS. STAT. § 102.80. According to our supreme court, WIS. STAT. § 102.18(1)(bp) "constitutes the 'exclusive remedy' for the bad faith conduct of an employer or an insurance carrier,"[9] but that statute "does not govern the conduct of the [DWD] or

---

[9] The supreme court referenced its prior decision in *Coleman v. American Universal Insurance Co.*, 86 Wis. 2d 615, 273 N.W.2d 220 (1979), where the court concluded that a worker's bad faith claim, based on the denial and delay of worker's compensation payments, against the worker's compensation insurer and its adjusting company was separate and distinct from the job-related injury and was not addressed by the Act. *Id.* at 618-19, 623. According to the court in *Aslakson*, "[t]he legislature was apparently unhappy with the *Coleman* decision and revised the statutes to respond to *Coleman*" by creating "WIS. STAT. § 102.18(1)(bp) in 1981 that specifically and explicitly provided an 'exclusive remedy' in the [Act] for bad faith claims against employers and their insurers." *Aslakson v. Gallagher Bassett Servs., Inc.*, 2007 WI 39, ¶75, 300 Wis. 2d 92, 729 N.W.2d 712.

its agent and does not impose any penalty on the [DWD] or its agent for bad faith conduct." *Aslakson*, 300 Wis. 2d 92, ¶¶45, 66. Accordingly, the Act "does not provide any remedy to the plaintiff for his bad faith claim against [Gallagher] for its alleged bad faith conduct in processing a worker's compensation claim, let alone an exclusive remedy." *Id.*, ¶¶66-67, 90.

¶28 We agree with Applied Underwriters that the holding in *Aslakson* does not apply here. As Applied Underwriters explained,

> While the Act did not provide any remedy for the bad faith conduct of the Fund or [DWD's] agent causing separate and distinct bad faith damages [in *Aslakson*], the Act does provide a remedy to Graef for what the [s]upreme [c]ourt held was an exacerbation of his worker's compensation injury caused by the refusal to authorize his medication refill.

In other words, because WIS. STAT. § 102.18(1)(bp) did not govern the Fund or the DWD, as they were not an "employer or insurance carrier," the statute likewise did not apply to Gallagher as the DWD's agent and the Fund's administrator. Here, Applied Underwriters is not the third-party administrator of the Fund or an agent of the DWD. It is an agent or representative of a worker's compensation insurer, which *is* entitled to immunity under the exclusive remedy provision. *See* WIS. STAT. § 102.03(2); *Walstrom*, 239 Wis. 2d 473, ¶¶1, 13.

¶29 Further, in *Aslakson*, our supreme court did not address or even cite *Walstrom* or *Wasley*, let alone overrule those cases. Presumably, our supreme court did not cite *Walstrom* or *Wasley* because the issues are not as aligned as Graef suggests. The basis for Graef's argument that *Aslakson* controls here is that the court in that case "recognized a tort claim against the same worker's compensation adjusting firm when no statute forbade the suit, just as no statute forbids it here." But that reasoning is persuasive only if we agree that WIS. STAT.

16

§ 102.03(2) does not apply to agents of a worker's compensation insurer such that the statute does not forbid the suit, which we do not.[10] The ***Aslakson*** court presumably did not discuss ***Walstrom*** and ***Wasley*** because those cases addressed situations where § 102.03(2) *did* apply to the insurer or employer, respectively, but WIS. STAT. § 102.18(1)(bp) *did not* apply to the Fund or the DWD in ***Aslakson***. Thus, the holding in ***Aslakson*** does not apply here.

## IV. Graef's Additional Arguments

### a. Independent Affiliated Corporation

¶30    Graef's remaining arguments are also unpersuasive. First, Graef argues that "Applied Underwriters, as an affiliated corporation of Continental Indemnity (they shared a common ownership), owed a tort duty to employees of a subsidiary or affiliate when it voluntarily assumed it."[11] In support of his position, he cites ***Miller v. Bristol-Myers Co.***, 168 Wis. 2d 863, 485 N.W.2d 31 (1992).

---

[10] Graef also argues that "[w]hile ***Walstrom*** holds that an adjusting firm working for a worker's compensation insurer might be immune (***Aslakson*** contradicts that), Applied Underwriters was no adjusting firm. It was an insurer" because WIS. STAT. § 618.02(2) "defines doing an insurance business as investigating and adjusting claims or assisting others in doing so, precisely what Applied Underwriters did here." Graef asserts that ***Aslakson*** and ***Walstrom*** involved adjusting firms, not insurers. We disagree that Applied Underwriters served in a different role from Gallagher in ***Walstrom***. In ***Walstrom***, Gallagher was an adjusting agent, which "administer[ed] claims under the worker's compensation policy" for the worker's compensation insurer. ***Walstrom***, 239 Wis. 2d 473, ¶3. In this case, based on the complaint, Applied Underwriters served in an indistinguishable capacity for Continental, allegedly determining whether to authorize payment of worker's compensation benefits. In ***Walstrom***, it was not the title of the entity that was important but whether it was acting as the representative or agent of an immune worker's compensation insurer. *See **id.***, ¶¶8-12. Like in ***Walstrom***, Graef does not make a serious argument that Applied Underwriters was not an agent or a representative of Continental. *See **id.***, ¶11.

[11] As an independent reason to reject Graef's argument here, we note that if Graef's proposition were true, Applied Underwriters would owe a tort duty to employees *of Continental*; however, Graef was not an employee of Continental.

There, the court concluded that a parent corporation lacked tort immunity under the Act when an employee of a subsidiary sued it for causing a fire that injured the employee. *Id.* at 871-72. The court in *Walstrom* also discussed *Miller* in its decision. Importantly, it specifically recognized that the "representative capacity doctrine provides immunity to those who act in their capacity as a representative for the employer from third party suits." *Walstrom*, 239 Wis. 2d 473, ¶10 (quoting *Miller*, 168 Wis. 2d at 879). The *Walstrom* court further explained that the *Miller* "court refused to apply the doctrine to the parent corporation of the subsidiary employer," observing "that the 'entity claiming immunity must owe a duty to the employer and have acted pursuant to that duty'" and "[t]he parent corporation [in *Miller*] did not." *Walstrom*, 239 Wis. 2d 473, ¶10 (quoting *Miller*, 168 Wis. 2d at 880).

¶31     Graef states that "*Miller* expressly holds that Applied Underwriters enjoys no immunity from tort claims here." Again, we disagree. *Miller*'s holding was not so expansive. Unlike Applied Underwriters, the parent corporation in *Miller* was not acting on behalf of the subsidiary, at the subsidiary's request, or making decisions on behalf of the subsidiary. *Miller*, 168 Wis. 2d at 880-81. *Miller* does not expansively hold that a company can never act as an agent of an affiliated company. Here, it is clear that Applied Underwriters assumed a duty to Continental when it executed the management agreement, which fact was missing in *Miller*.

¶32     In his reply brief, Graef argues that under basic Wisconsin law, Applied Underwriters assumed a tort duty *to Graef* when it contracted to provide him medication and "[t]his contract, which obligated Applied [Underwriters] to safeguard Graef and others, imposed responsibility to avoid mistakes increasing the risk of harm and left it liable in tort to those it hurt." In support of his position,

Graef quotes the management agreement for the proposition that "Applied [Underwriters] agreed to dispense Graef's medications with 'care, prudence and diligence.'"

¶33   First, as referenced above, *see supra* note 11, Applied Underwriters' contract was with Continental, not with Graef.  Second, while that contract did provide that Applied Underwriters would "perform the services under this Agreement with the same standards of care, prudence and diligence which it exercises in the performance *of its own responsibilities*," the contract also states that "the performance of the duties hereunder … will always be subject to the direction and supervision of [Continental's] Board of Directors, its Executive and Investment Committees and the instruction of appropriate officers of" Continental and that Continental "will *retain the ultimate responsibility* for all adjustments and claim payments made on its behalf."  (Emphasis added.)  Thus, the contract clearly states that Continental retained all responsibility for any actions Applied Underwriters took under the Act.

¶34   Third, even if we assume that Applied Underwriters owed Graef a tort duty, we would have to also assume that Applied Underwriters owed Graef the same tort duty that Continental owed Graef because Applied Underwriters could not have acted as it allegedly did unless it did so as Continental's agent under the Act.  Thus, if WIS. STAT. § 102.03(2) prevents a tort claim against Continental, then it should also apply to Applied Underwriters.  The same duty results in the same immunity: Graef is only entitled to the same claims against Applied Underwriters as he would be against Continental.  A contrary result would undermine the Act's grand bargain.

¶35     Graef also cites *Couillard v. Van Ess*, 152 Wis. 2d 62, 447 N.W.2d 391 (Ct. App. 1989).   There, Couillard was conducting demolition when he stepped onto a plastic-covered hole and fell eleven feet, resulting in his death two days later.  *Id.* at 65.  Couillard's employer paid worker's compensation benefits to Couillard's widow and his estate, but his widow also brought a third-party liability action against the Van Esses as owners-lessors of the factory premises for common-law negligence and a violation of the safe place statute for failure to cover or guard the hole.  *Id.*  We refused to apply the exclusive remedy provision to the Van Esses, stating that "it is beyond dispute that a corporation is a separate entity from those who own it," and, "[t]hus, the legal distinction between the corporation/employer and the Van Ess partnership that leased the factory to the corporation eliminates the Van Esses' immunity as individuals." *Id.* at 66.

¶36     Graef contends that *Couillard* stands for the proposition that "affiliated companies are not vicariously responsible for each other's misconduct, so if affiliates share no liabilities for the other's mistakes, they share no immunities from tort liability either."  He claims that "Applied Underwriters and Continental Indemnity are affiliated, but independent, companies.  If Applied Underwriters carries no liability under [WIS. STAT.] ch. 102, it enjoys no immunity there either, just as *Couillard* holds."

¶37     Again, we conclude that *Couillard* is inapplicable.   Although Applied Underwriters admits that it and Continental "are affiliated corporations," it explained that it "is not arguing that it is immune because it is so closely related to Continental so as to be indistinguishable."  Applied Underwriters claims it is immune because it acted as an agent of Continental and "[w]hether the companies are related is completely irrelevant."  *Couillard* did not address immunity for

agents of employers and worker's compensation insurers; thus, it does not dictate a specific result here.

¶38    Finally, Graef claims that like the parties in *Miller* and *Couillard*, Applied Underwriters should not benefit from the representative capacity doctrine because "[t]he doctrine actually only protects those who owe employees no duty." *See Miller*, 168 Wis. 2d at 880 ("[T]he basis for granting immunity under this doctrine is that the person is granted immunity from suits by employees because such person owes a duty to the employer, not the employee."). We believe the representative capacity doctrine is applicable here because, for the reasons stated above, we disagree that Applied Underwriters had a separate and distinct duty to Graef under its contract with Continental. Applied Underwriters was not an *independent* affiliated corporation.

### b. Medical Malpractice

¶39    Next, Graef suggests that a "guiding principle is that those like Applied Underwriters who further injure already vulnerable workers by providing faulty medical care answer in tort for it." In essence, Graef asserts that "injuries aggravated by medical malpractice entitle employees to additional compensation under the Act, but nothing relieves careless physicians from civil liability"; therefore, "[i]t makes no sense to immunize Applied Underwriters for making similar misjudgments that interfere with sound and successful medical treatment." Graef argues that Applied Underwriters' "mistakes produced entirely new injuries, and none of those mistakes can be attributed to the employer when Graef left its employment years before."

¶40    Graef's position is not supported by the law. First, Applied Underwriters did not provide medical care; thus, the reasons supporting liability

for medical malpractice claims simply do not apply. Second, our supreme court's decision in *Graef* forecloses Graef's argument, as the court explained that "the legislature indicated that any denial-of-benefits claim, whether negligent or in bad faith, must be brought as a worker's compensation claim." *Graef*, 397 Wis. 2d 75, ¶23 (citing WIS. STAT. § 102.18(1)(bp)). Graef attempts to distance this case from worker's compensation and maneuver it outside the Act by claiming that Applied Underwriters' alleged "mistakes" produced "new injuries" that could not be "attributed to [his] employer," but Applied Underwriters could not have made this alleged mistake—the refusal to authorize benefits—unless it was acting on behalf of and under the authority of Continental. *Graef* concluded that Graef's "complaint presents an unbroken chain of events" from the workplace injury to his self-inflicted gunshot wound and that the gunshot wound "grew out of his original workplace injury, because Continental failed to authorize and pay for the medication"; therefore, Graef's "allegations …, if proven, would satisfy the conditions for worker's compensation liability." *Graef*, 397 Wis. 2d 75, ¶¶15, 19, 21.

### c. Public Policy

¶41 Graef's next argument is that public policy factors do not require dismissal of this suit and that this suit actually promotes sound public policy.[12]

---

[12] In Wisconsin, even if a claim meets all the requisite elements of a cause of action, a court may conclude, "as a matter of law, that considerations of public policy require dismissal of the claim," *Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 654, 517 N.W.2d 432 (1994), because "negligence and liability are distinct concepts," *Hoida, Inc. v. M&I Midstate Bank*, 2006 WI 69, ¶25, 291 Wis. 2d 283, 717 N.W.2d 17 (citation omitted). "The legislature also establishes public policy for the state through the statutes it enacts, and we are limited 'to applying the policy the legislature has chosen to enact, and may not impose [our] own policy choices.'" *Hoida*, 291 Wis. 2d 283, ¶24 (alteration in original; citation omitted). According to our supreme court, "[t]he public policy reasons that may preclude liability include:"

(continued)

The circuit court did not address the six public policy factors in its order granting Applied Underwriters' motion to dismiss because its decision relied on WIS. STAT. § 102.03(2) and case law to determine that the Act provided Graef's exclusive remedy against Applied Underwriters. It appears, based on Graef's arguments on appeal, that he is arguing public policy factors *in the alternative* and in response to Applied Underwriters' alternative arguments before the circuit court—that the first, third, and sixth public policy factors warrant dismissal of Graef's claims. Given our conclusion above and our supreme court's decision in *Graef*, we deem it unnecessary to address the parties' public policy arguments. *See State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) ("An appellate court should decide cases on the narrowest possible grounds.").

### d. Unlicensed Status

¶42    Graef's final argument is that Applied Underwriters' alleged "unlicensed status deprives it of immunity." According to Graef, the specific role Applied Underwriters played in this case is "opaque" as to whether it "served as a claims adjusting firm, a genuine insurer, or in some other capacity." Nevertheless, Graef claims that Applied Underwriters was required to obtain a certificate of authority in Wisconsin to "do an insurance business," which Applied Underwriters

---

(1) the injury is too remote from the negligence, (2) the injury is too wholly out of proportion to the tortfeasor's culpability, (3) in retrospect it appears too highly extraordinary that the negligence should have resulted in the harm, (4) allowing recovery would place too unreasonable a burden on the tortfeasor, (5) allowing recovery would be too likely to open the way for fraudulent claims, and (6) allowing recovery would enter a field that has no sensible or just stopping point.

*Gritzner v. Michael R.*, 2000 WI 68, ¶27, 235 Wis. 2d 781, 611 N.W.2d 906.

did not do. *See* WIS. STAT. §§ 600.03(27) (defining "[i]nsurer" as "any person or association of persons doing an insurance business as a principal" or "any person purporting or intending to do an insurance business as a principal on his or her own account"); 610.11[13]; 618.02(2) (defining "[d]oing an insurance business" as, for example, "[i]nvestigating, settling, adjusting or litigating claims"); *see also supra* note 10. Graef appears to suggest that we should apply the clean-hands doctrine.[14] Essentially, Graef urges us to punish Applied Underwriters for allegedly not having the proper insurance licensing with the State of Wisconsin by withholding WIS. STAT. § 102.03(2) immunity in the context of this lawsuit.

¶43 In response, Applied Underwriters argues that Graef's argument fails because Applied Underwriters "was not required to obtain a certificate of

---

[13] WISCONSIN STAT. § 610.11 provides:

> No person may do an insurance business as defined in [WIS. STAT. §] 618.02(2) on the person's own account in this state, either in person, or through agents or brokers, or through the mail or any other method of communication, except:
>
> (1) An insurer authorized to do business in this state, within the limits of its certificate of authority; or
>
> (2) An insurer doing business under [WIS. STAT. §] 618.41.

[14] We previously explained that

> [u]nder the clean-hands doctrine, a party who "has been guilty of substantial misconduct" of the matters in litigation such that the party "has in some measure affected the equitable relations subsisting between the two parties and arising out of the transaction shall not be afforded relief when he [or she] comes into court."

*State v. Kaczmarski*, 2009 WI App 117, ¶15, 320 Wis. 2d 811, 772 N.W.2d 702 (alteration in original; citation omitted).

authority, the argument regarding unrelated issues is a red herring, and Graef fails to present any coherent legal argument why any of it should affect the application of immunity under [WIS. STAT. §] 102.03(2)." According to Applied Underwriters, "Graef's argument rests on a misreading of the statute" because "Applied Underwriters was clearly not doing insurance business on its *own* account but was assisting Continental, which issued the insurance policy and had the statutory obligation to pay benefits under the Act." *See* WIS. STAT. § 610.11.

¶44 We conclude that whether Applied Underwriters was properly licensed or not is completely irrelevant to the issue on appeal. Graef does not allege that *Continental* is not a licensed worker's compensation insurance carrier, and he does not dispute Applied Underwriters' assertion that "Continental indisputably has a certificate of insurance and disclosed to the Office of the Commissioner of Insurance (OCI) Applied[ Underwriters]'s role as providing certain management, claims processing, premium processing, and data processing services at actual cost in Continental's Annual Statement filed with the OCI." The key question, then, for the purpose of the motion to dismiss is whether Applied Underwriters was acting as Continental's agent or representative when it was allegedly negligent in failing to approve payment for a refill of Graef's antidepressant medication.

¶45 Here, it is clear that Applied Underwriters had a contract with Continental to provide certain services, including adjusting claims; thus, Applied Underwriters was acting as an agent of Continental when it allegedly denied Graef's antidepressant refill. Graef has not presented any legal authority withholding WIS. STAT. § 102.03(2) immunity based on an agent's alleged violation of WIS. STAT. § 610.11. Further, we are not persuaded that whether a federal court determined that a "Reinsurance Participation Agreement" executed

in a separate case, with separate parties, and based on a different state's legal code was an insurance contract, *see **Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.***, 913 F.3d 409, 411, 422 (4th Cir. 2019), or whether Applied Underwriters has an alleged "pattern nationwide" of "flout[ing] insurance regulations," have any influence over, let alone control of, our decision here.

¶46     To the extent that Graef attempts to make an argument under the clean-hands doctrine, we conclude that this argument is entirely undeveloped. *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments).   Graef merely argues that "[h]e who seeks equity must do equity" and summarizes Applied Underwriters' alleged wrongdoing.  However, as Applied Underwriters noted, it is not seeking equitable relief.   Graef's claim that Applied Underwriters *is* seeking equitable relief by asking the court to "immunize it from all liability despite the fact that no statute does so" is not persuasive given our conclusions above.

¶47     Further, Graef does not argue how the clean-hands doctrine would otherwise apply here.   It appears, instead, that the conduct that Graef asserts supports the application of the clean-hands doctrine—namely, Applied Underwriter's failure to obtain a certificate of authority to do an insurance business in Wisconsin—is not actually related to the harm from which Graef seeks relief.   Further, although Graef cites ***City of Oak Creek v. DNR***, 185 Wis. 2d 424, 451, 518 N.W.2d 276 (Ct. App. 1994), for the proposition that "Wisconsin courts refuse to reward litigants who have engaged in wrongdoing without appropriate licensure or permitting," that case is materially factually and legally distinguishable, and Graef does not explain how the court's holding there would apply in this case.

¶48    In summary, we conclude that the Act's exclusive remedy provision prohibits Graef from maintaining this tort action against Applied Underwriters. Therefore, Graef cannot recover under any circumstances, and the circuit court properly dismissed the complaint in this case.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.